# EXHIBIT 1

FILED IN Washtenaw County Trial Court; 11/5/2026 10:19 AM

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF WASHTENAW

ALEXANDER OTTENSOSER,

Plaintiff,

v.

UNIVERSITY OF MICHIGAN,

UNIVERSITY OF MICHIGAN OFFICE OF FRATERNITY & SORORITY LIFE,

UNIVERSITY OF MICHIGAN INTERFRATERNITY COUNCIL,

THE DELTA CHI FRATERNITY, INC.,

JOHN DOE MEMBERS 1-10,

PROPERTY MANAGEMENT SPECIALISTS, INC.,

JOHN DOE LESSORS 1-12,

JOHN DOE BEVERAGE PURCHASER,

LUXCO, INC.,

MGP INGREDIENTS, INC.,

JOHN DOE BOTTLE MANUFACTURER,

JOHN DOE BEVERAGE RETAILER,

and

JOHN DOE FLAG BURNERS 1 & 2,

Defendants.

26-002328-NO
Case No. 26- -NO
Hon. JUDGE TRACY VAN DEN BERGH

_______________________________________________/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

## COMPLAINT

There is no other pending or resolved civil action arising out of the transaction or occurrence alleged in the complaint. MCR 1.109(D)(2)(a)(i).

*/s/ Daniel I. Jedell*
Daniel I. Jedell (P80850)

Plaintiff, ALEXANDER OTTENSOSER, by and through his attorneys, MORGAN & MORGAN, brings this Complaint against Defendants University of Michigan, University of Michigan Office of Fraternity & Sorority Life, University of Michigan Interfraternity Council, The Delta Chi Fraternity, Inc., John Doe Members 1-10, Property Management Specialists, Inc., John Doe Lessors 1-12, John Doe Beverage Purchaser, Luxco, Inc., MGL Ingredients, Inc., John Doe Bottle Manufacturer, John Doe Beverage Retailer, and John Doe Flag Burners 1 & 2 (collectively "Defendants") and alleges as follows:

## INTRODUCTION

1. This is an action for damages related to catastrophic thermal injuries sustained by University of Michigan student, Alexander Ottensoser. This action sounds in negligence, premises liability, and product liability.

2. On October 4, 2025, Alexander Ottensoser ("Plaintiff") was severely burned while attending a tailgate and house party ("Party") at 814 E. University Avenue, Ann Arbor, MI 48104 ("Subject Property"), owned by Property Management Specialists, Inc. and leased to John Doe Lessors 1-12, each of whom were members of the Delta Chi fraternity.

3. The Plaintiff sustained approximately 21–25% TBSA partial- and full-thickness flame burns involving his face, neck, ears, chest/upper torso, abdomen, bilateral upper extremities, and posterior right arm. He was hospitalized and received acute medical care in a burn unit from October 4 through October 20, 2025. The treatment of his injuries included, but was not limited to, serial debridement, feeding-tube support, and split-thickness autografting of the bilateral upper extremities, neck, chest, right flank, and abdomen, with a left-thigh donor site. Among other things, the Plaintiff continues to experience symptomatic hypertrophic scarring, pain, pruritus, and functional restrictions in the anterior neck, chest and right flank, requiring compression garments,

scar care, laser and steroid treatment, and fractional CO2 laser treatment with intralesional Kenalog.

4. The Party at the Subject Property was a registered Delta Chi event, hosted by the local chapter of The Delta Chi Fraternity, Inc., approved and sanctioned by the University of Michigan, The University of Michigan Office of Fraternity & Sorority Life, and the University of Michigan Interfraternity Council.

5. During the Party, and before the start of the Michigan-Wisconsin football game, John Doe Flag Burners 1 & 2 rose to a stage that had been constructed in the yard of the Subject Property. A large crowd of University of Michigan students, their parents, and Michigan alumni gathered to watch John Doe Flag Burners 1 & 2 ignite and burn the University of Wisconsin flag. Plaintiff observed from a vantage point approximately 10’ from the stage. John Doe Flag Burners 1 & 2 used an alcoholic beverage known as Everclear 151, a 75.5% alcohol by volume beverage, to assist ignition and accelerate the fire. When open flame was introduced to the bottle of Everclear 151 (75.5% ABV), a fireball left the stage and ignited the upper body of Alexander Ottensoser (“Subject Incident”).

6. Flame jetting is a blowtorch-like phenomenon where a concentrated stream of fire shoots 10-15’ (or more) out of a flammable liquid container. Flame jetting occurs when a container of flammable liquid meets an ignition source. Open flame ignites the internal, combustible air fuel gas mixture and, as the internal gas volume ignites, a rapid volume expansion displaces the liquid remaining in the container. A violent release of liquid through the container opening occurs, and the bottle becomes a flamethrower, temporarily expelling flame in the direction that the bottle is pointing.

The circumstances/conditions that result in flame jetting are not obvious to the reasonably prudent person and are not within the common knowledge of most individuals situated similarly to Alexander Ottensoser. Alexander Ottensoser was unaware of the dangerous circumstances/conditions that were created by the parties to this action.

The Fire Research Laboratory at the Bureau of Alcohol, Tobacco, Firearms and Explosives (“ATF”) has conducted extensive research on flame jetting. That research has revealed that almost any necked, portable, flammable liquid container can potentially jet. Common flammable liquids capable of flame jetting include gasoline, methanol, ethanol, acetone, and liquor with high alcohol content. Containers with large openings, such as buckets, cannot jet because ignition of the vapors

does not result in rapid expansion forcing the remaining liquid through a small opening. Flame jetting typically occurs when the container is tilted and vapors are pouring from its mouth. This allows air to enter the container's headspace, which dilutes the flammable liquid vapors within their flammable limits. The longest flame jets occur when a container is about one-third full of liquid because there is greater vapor accumulation in the headspace and sufficient flammable liquid to be expelled when jetting occurs.

Flame arrestors are highly effective in preventing flame jetting. In ATF testing, no flame jetting was observed in portable flammable liquid containers equipped with flame arrestors. To equip a bottle with flame arrestors typically costs about 50 cents. The Everclear 151 bottle does not include a flame arrestor.

## PARTIES, JURISDICTION AND VENUE

7. This is a civil action for damages in excess of $25,000 brought against various individual and corporate tortfeasors, along with several subdivisions of the State of Michigan, including the University of Michigan, University of Michigan Office of Fraternity & Sorority Life, University of Michigan Interfraternity Council.

8. At all times material hereto, the University of Michigan. ("University") was and is a public University in the State of Michigan, with its primary campus in Washtenaw County. As a subdivision of the State, legal action may be filed in the Michigan Court of Claims, pursuant to MCL 600.6419 (1) and 600.6404(3); however, the jurisdiction of the Court of Claims is not exclusive and the matter may also be heard by the Circuit Court pursuant to MCL 600.6421(3), as this action "arises out of the same transaction or series of transactions" that are properly plead before the Circuit Court. Under such circumstance, any claims against the State "shall be tried and determined by the Judge" while the remaining claims may be "tried to a jury under the supervision of the same trial Judge." Accordingly, the Plaintiff has elected to bring his claim in the Circuit Court for Washtenaw County and is specifically requesting that the Circuit Court permit the joinder of these issues.

9. At all times material hereto, the University of Michigan Office of Fraternity & Sorority Life ("FSL") has its principal place of business within Ann Arbor and Washtenaw County. As a subdivision of the State, legal action may be filed in the Michigan Court of Claims, pursuant to MCL 600.6419 (1) and 600.6404(3), but may also be heard by the Circuit Court pursuant to MCL 600.6421(3), as this action "arises out of the same transaction or series of transactions" that

are properly plead before the Circuit Court. Under such circumstance, any claims against the State "shall be tried and determined by the Judge" while the remaining claims may be "tried to a jury under the supervision of the same trial Judge." Accordingly, the Plaintiff is has elected to bring his claim in the Circuit Court for Washtenaw County.

10. At all times material hereto, the University of Michigan Interfraternity Council ("IFC") has its principal place of business in Ann Arbor and Washtenaw County. As a subdivision of the State, legal action may be filed in the Michigan Court of Claims, pursuant to MCL 600.6419 (1) and 600.6404(3), but may also be heard by the Circuit Court pursuant to MCL 600.6421(3), as this action "arises out of the same transaction or series of transactions" that are properly plead before the Circuit Court. Under such circumstance, any claims against the State "shall be tried and determined by the Judge" while the remaining claims may be "tried to a jury under the supervision of the same trial Judge." Accordingly, the Plaintiff is has elected to bring his claim in the Circuit Court for Washtenaw County.

11. On March 09, 2026, Notice was filed in the Court of Claims. That Notice was then conveyed by correspondence to the Michigan Attorney General, The Regents of the University of Michigan, The Office of the Vice President and General Counsel for the University of Michigan, the Director of Fraternity & Sorority Life at the University of Michigan, and the University of Michigan Interfraternity Council.

12. Public universities, such as the University of Michigan, are not immune from tort liability when engaged in proprietary functions. A proprietary function is "any activity which is conducted primarily for the purpose of producing a pecuniary profit for the governmental agency, excluding, however, any activity normally supported by taxes or fees." MCL 691.1413. The management of registered student organizations, including fraternities, and even their hazing activities, are inexorably intertwined with profit-generating university functions. The University of Michigan through its Fraternity & Sorority Life has, at all relevant times, financially benefitted from operation of its Interfraternity Council through chapter dues, event fees, and housing. Fraternity & Sorority Life charges mandatory fees to fraternity and sorority members each semester that goes toward Fraternity & Sorority Life operations; and a portion of member fees also goes to the Interfraternity Council for its own programming, recruitment and management. Further, the University of Michigan also receives revenue from chapter fees, rentals and taxes and insurance from private fraternity chapter houses; and the Greek system generates revenue for the University

of Michigan's auxiliary services and campus life. Hazing and/or gross negligence incidents, like the one at issue, arise out of a non-governmental "proprietary function" of the University of Michigan, by and through its Fraternity & Sorority Life and/or Interfraternity Council.

13. At all times material hereto, Plaintiff was a student at the University of Michigan, resident of Washtenaw County, Michigan, was and is *sui juris*. Plaintiff was a pledge of the Delta Chi Fraternity, at the Michigan Chapter, and on the date of the Subject Incident, he was an invitee at the Subject Property, where members and initiated brothers of Delta Chi were hosting a Party and Plaintiff was personally invited to attend.

14. At all times material hereto, The Delta Chi Fraternity, Inc. ("Delta Chi") was a foreign nonprofit corporation, situated in the State of Indiana at 3845 N. Meridian Street, Indianapolis, IN 46208, and doing substantial, not isolated, business in Washtenaw County, Michigan where it operated its Michigan Chapter at the University of Michigan.

15. At all times material hereto, John Doe Members 1-10 were officers, initiated members, and brothers of Delta Chi, students at the University of Michigan, residing in Washtenaw County, Michigan, and were *sui juris*. Despite the reasonable investigation of the Plaintiff, John Doe Members 1-10 remain unidentified, subject to discovery. John Doe Members 1-10 are those individuals responsible for the planning and organization of the Party, including but not limited to the flag-burning event that occurred.

16. At all times material hereto, Property Management Specialists, Inc ("Property Owner") was a Michigan Domestic Profit Corporation with its principal place of business at 117 N. Division, Ann Arbor, MI 48104 and conducting substantial, not isolated, business in Washtenaw County, MI where it owned, operated, and controlled the residence located at 814 E. University Avenue, Ann Arbor, MI 48104 ("Subject Property") that was being offered as a rental property for students attending the University of Michigan.

17. At all times material hereto, John Doe Lessors 1-12 were initiated members and brothers of Delta Chi, students at the University of Michigan, residing in Washtenaw County, Michigan, and were *sui juris*. John Doe Lessors 1-12 were the twelve signatories to the residential lease agreement for the Subject Property and each maintaining possession and control of the Subject Property during the period May 17, 2025 – May 10, 2026. Despite the reasonable investigation of the Plaintiff, John Doe Lessors 1-12 remain unidentified, subject to discovery.

18. At all times material hereto, John Doe Beverage Purchaser was an initiated member and brother of Delta Chi, a student at the University of Michigan, was residing in Washtenaw County, Michigan, and was *sui juris*. John Doe Beverage Purchaser purchased, transported, and otherwise provided Everclear 151, a 75.5% alcohol by volume beverage, for use at the Party. John Doe Beverage Purchaser provided John Doe Flag Burners 1 & 2 with the Everclear 151 used to ignite and burn the Wisconsin flag, ultimately used in the flame jetting incident that severely injured Plaintiff. Despite the reasonable investigation of the Plaintiff, John Doe Beverage Purchaser remains unidentified, subject to discovery.

19. At all times material hereto, LuxCo, Inc., was a Missouri Corporation with its principal place of business at 5050 Kemper Avenue, St Louis, MO 63139. LuxCo, Inc., conducting substantial, not isolated, business in Michigan, including the distribution, marketing, and sale of an alcoholic beverage known as Everclear. Everclear is a key part of the LuxCo ("Everclear") portfolio of products.

20. At all times material hereto, MGP Ingredients, Inc. ("MGP") was a Kansas, Domestic For-Profit Corporation, conducting substantial, not isolated, business in Michigan, including the distribution, marketing, and sale of alcoholic beverages. MGP acquired Everclear in April 2021, and has consistently grown the Everclear brand, focused on developing Everclear to connect with consumers. Accordingly, MGP profited from the sale of Everclear 151 (75.5% ABV) in each of its markets, including Washtenaw County, Michigan, where the subject bottle was sold. Everclear was a wholly-owned subsidiary of MGP; MGP directly participated in, approved, controlled, or assumed responsibility for safety-critical decisions regarding Everclear 151 (75.5% ABV), including but not limited to the following:

a. approving or controlling Everclear's label content, warnings, bottle/closure configuration, or packaging;
b. supplying or controlling the alcohol's manufacture, formulation, specifications, or quality/safety systems;
c. developing, approving, or disseminating marketing to bars, mixologists, distributors, or consumers;
d. maintaining complaint, claims, adverse-event, or incident information concerning high-proof alcohol ignition, flash fire, vapor ignition, or flaming-drink use;

e. controlling recall, warning, safety, legal, regulatory, or product-stewardship decisions; or

f. directing Everclear's post-acquisition distribution or safety practices.

21. At all times material hereto, John Doe Bottle Manufacturer was an unidentified corporate entity, conducting substantial, not isolated business, in Michigan. The product distributed by John Doe Bottle Manufacturer for use with Everclear 151 (75.5% ABV) is distinct from standard whiskey, tequila, or vodka bottles distributed by Everclear. Despite the reasonable investigation of the Plaintiff, the specific glass bottle manufacturer or third-party packaging supplier contracted to produce the physical glass containers for Everclear is proprietary corporate supply chain information, and is not publicly disclosed. John Doe Bottle Manufacturer is subject to the jurisdiction of the Court as a result of the placement of the product into commerce and the explicit additional conduct of the Defendant as evidenced by its purposeful availment and intent to serve the Michigan market through the national distribution of the Everclear 151 (75.5% ABV) product, by Everclear.

22. At all times material hereto, John Doe Beverage Retailer was an unidentified, local package store, conducting substantial, not isolated business in Michigan, and selling spirits to individuals in Washtenaw County, Michigan. Despite the reasonable investigation of the Plaintiff, John Doe Beverage Retailer was unable to be identified, subject to discovery. Upon information and belief, John Doe Beverage Retailer sold Everclear 151, a 75.5% alcohol by volume beverage, to John Doe Beverage Purchaser.

23. At all times material hereto, John Doe Flag Burners 1 & 2 were initiated members and brothers of Delta Chi, students at the University of Michigan, residing in Washtenaw County, Michigan, invitees at the Subject Property, and were *sui juris*. John Doe Flag Burners 1 & 2 received Everclear 151, a 75.5% alcohol by volume beverage, from John Doe Beverage Purchaser with the intent to use Everclear 151 (75.5% ABV) to ignite and accelerate a fire on the University of Wisconsin flag.

24. Jurisdiction is proper in this Court, as the incident causing Plaintiff's severe injuries occurred in Washtenaw County, Michigan, and all claims brought against various subdivisions of the State arise out of the same transaction or series of transactions that are properly plead before the Circuit Court, pursuant to MCL 600.6421(3). Further, the Plaintiff has requested a jury trial for each of the remaining Defendants, who are either residents of Michigan or have demonstrated

purposeful availment to the laws of Michigan and the jurisdiction of this Court through their substantial, rather than isolated, business within Washtenaw County.

25. There is no Federal question and there is incomplete diversity of citizenship due to the inclusion of Michigan resident defendants. The Plaintiff expressly disclaims every claim arising under the Constitution, treaties, or laws of the United States (including any claim arising from an act or omission on a federal enclave, or of any officer of the U.S. or any agency or person acting under him occurring under color of such office). No claim of admiralty or maritime law is raised.

## FACTUAL ALLEGATIONS RE: UNIVERSITY, FSL, IFC, DELTA CHI, JOHN DOE MEMBERS 1-10, PROPERTY MANAGEMENT SPECIALISTS, INC., JOHN DOE LESSORS 1-12, JOHN DOE BEVERAGE PURCHASER, and JOHN DOE FLAG BURNERS 1 & 2

26. At all times material hereto, The University's authority over fraternities and fraternity members comes principally from three overlapping sources:

i. Student status: enrolled students are subject to the University's Statement of Student Rights and Responsibilities and other University policies.

ii. Recognition and student-organization status: a chapter's ability to operate as a recognized University-affiliated student organization, participate in IFC recruitment/programming, and receive FSL support is conditioned on compliance with University and council requirements.

iii. IFC/chapter membership: Delta Chi's affiliation with the University and IFC creates an additional layer of IFC constitution/bylaws, risk-management, and event standards binding the chapter and its members as a condition of membership/participation.

Through these documents, the University, FSL, and IFC are able to create a uniform code of conduct and disciplinary framework for students and, more specifically, for individuals and entities associated with the Greek system. That framework establishes expectations including but not limited to entity and individual / member alcohol possession, furnishing, and consumption. It establishes the rights and obligations of the University, FSL, and IFC for oversight with respect to any student organization, event, or party; it provides risk management guidance and training; it

creates chapter scorecards and compliance audits; and it gives the University, FSL, and IFC the ability to sanction both the entity and individuals / members for non-compliance.

27. At all times material hereto, FSL was and is the employee, actual agent or apparent agent, or representative of University, as it relates to the establishment, organization, operation, and oversight of fraternities and sororities at the University of Michigan, which has grown to over 5,500 students and includes the operation of 4 councils, including IFC. FSL provides professional oversight, institutional support accountability, to fraternities and sororities at the University of Michigan and ensures that each of the organizations, including Delta Chi, adhere to the community values civility, dignity, diversity, education, equality, freedom, honesty, and long-standing safety practices of the University. FSL and University acted within the course and scope and authority of that relationship and FSL did provide services as an employee, actual or apparent agent, or representative to University.

28. At all times material hereto, IFC was and is the employee, actual agent or apparent agent, or representative of University and FSL. IFC was and is the local governing body that serves the affiliated fraternities, including Delta Chi. IFC provides a number of programs and resources for its affiliated chapters, such as sober monitor training for new members, mental health chairs within each chapter, and numerous leadership opportunities for emerging leaders within the council. Additionally, the council works to monitor events around campus to look out for the safety of members and guests at events. By partnering with departments across campus such as the Sexual Assault Prevention and Awareness Center (SAPAC), Wolverine Wellness, and Counseling and Psychological Services (CAPS), IFC is committed to creating a healthier and safer fraternity and sorority community. IFC, FSL, and University acted within the course and scope and authority of that relationship and FSL did provide services as an employee, actual or apparent agent, or representative to University.

29. At all times material hereto, the University, FSL and IFC had authority over Delta Chi and its members as an IFC member of the University.

30. At all times material hereto, the Party was a chapter-promoted event, advertised as WISCO WEEKEND, occurring at the Subject Property. The invitation was distributed among the members and pledges of the Michigan Chapter of Delta Chi.

31. At all times material hereto, the Party registered and approved by the University, FSL, and IFC. Members/pledges attended the Party in a chapter capacity.

32. At all times material hereto, Michigan Chapter Delta Chi officers, members, and initiated brothers, including but not limited to John Doe Members 1-10, John Doe Lessors 1-12, and John Doe Flag Burners 1 & 2 were aware that the University of Wisconsin flag was going to be burned during the Party.

33. At all times material hereto, John Doe Members 1-10, John Doe Lessors 1-12, John Doe Beverage Purchaser, and John Doe Flag Burners 1 & 2 were each subject to the University's student-conduct requirements by virtue of enrollment. Delta Chi's recognition and IFC membership were subject to University, FSL, and IFC requirements, including alcohol, organizational-conduct, and safety requirements. The University, FSL, and IFC exercised—or held themselves out as exercising—authority to recognize, regulate, investigate, sanction, suspend, and withdraw privileges from member chapters and students.

34. Based upon the recent history of identified and sanctioned student conduct, the University, FSL and IFC knew or reasonably should have known that fraternity recruitment, tailgates, and off-campus social events result in alcohol misuse, hazing, open flames, and unsafe initiation/activity rituals that create a recurring risk of serious injury and, by October 4, 2025, the specific combination of an open flame and alcoholic beverages had already generated a closely analogous, catastrophic, fraternity-house fire-incident involving Worcester Polytech Institute and another student, catastrophically injured.

35. Within the knowledge of the University, FSL, and IFC were the following:

i. In 1998, a University of Michigan student died after attending a Greek event where alcohol was served; ten members were later arrested and charged with alcohol-related offenses;

ii. In 2015, there were 18 allegations of sexual misconduct, drugging, and near-death hazing experiences, many of which were connected to the misuse of alcohol.

iii. That same year, the University President publicly called for reform after reports of fraternity-related "wild parties" and excessive alcohol use entered the news;

iv. In February 2016, a University of Michigan sorority was disbanded following underage drinking and hazing violations;

v. In November 2017, the University, FSL, and IFC investigated and sanctioned numerous Greek organizations, including the suspension of all social activities and new-member pledge terms. This was done in response to more than 30 hospital transports during the Michigan State football weekend and 7 additional transports over Halloween weekend;

vi. A 2017 public report found that only 22% of fraternities (as compared to 76% of sororities) met or exceeded expectations for risk-management compliance in the Fall of 2017 (demonstrating that 78% of fraternities at the University of Michigan failed to meet expectations for risk-management compliance) resulting in 23 complaints to the University and FSL, including 13 claims of providing alcohol to minors and/or endangering the safety and wellbeing of others, 3 allegations of hazing.

vii. In January 2018, the IFC adopted and imposed safety measures, including the removal of hard alcohol at IFC events, limits on event days, and more sober monitors at events;

viii. In November 2018, a hazing response team investigation found "dangerous hazing practices" in the new member process of one campus fraternity, including forced alcohol consumption and violent physical hazing;

ix. In 2021, 2022, 2023, and 2024, several fraternities were sanctioned for violations involving hazing and alcohol misuse; and

x. October 2024 – February 2025 netted 25 hazing complaints, resulting in investigative interviews citing among other things marijuana use, heavy alcohol consumption, and underage drinking.

36. At the time of the Subject Incident, another fraternity party at Worcester Polytechnic Institute had already made national news when Yvette Digan, a 22-year-old Boston University exchange student, attended an off-campus social gathering at a fraternity house in May 2025, where she suffered second-and-third degree burns over 1/3 of her body, when a fraternity member negligently poured a 190-proof Everclear grain alcohol onto an open fire pit and triggered an explosive fireball.

37. At all times material hereto, Delta Chi was and is widely recognized as a social organization that exists to promote friendship among young men, and more particularly, among its

members. The organization was founded on the principle of bringing together men of similar interests to work towards a common good by creating a common bond of personal development to accomplish great things and form life-long relationships. Character is a key tenet of membership in Delta Chi, resulting in each member holding himself to a higher standard and enforcing Eleven Basic Expectations to fulfill his full potential. These Eleven Basic Expectations are principles to live by at Delta Chi and include:

a. Striving for academic achievement and practice academic integrity.
b. Respecting the dignity and worth of all persons. Not physically, mentally, psychologically or sexually abusing or hazing any human being.
c. Protecting the health and safety of all human beings.
d. Respecting my property and the property of others; therefore, neither abusing nor tolerating the abuse of property.
e. Meeting financial obligations in a timely manner.
f. Neither using nor supporting the use of illegal drugs; neither abusing nor supporting the abuse of alcohol.
g. Acknowledging that a clean and attractive environment is essential to both physical and mental health; therefore, doing all to see that the chapter property is safe, properly cleaned and maintained.
h. Knowing and understanding the ideals expressed in the fraternity Ritual and incorporating them into daily life.
i. Exercising compassion and understanding in dealing with all persons.
j. Sustaining commitment to and involvement with the fraternity for life.
k. Challenging all fraternity members to abide by these fraternity obligations and confronting those who violate them.

In order to fulfill these Basic Expectations, Delta Chi provides and maintains behavior standards and Risk Management Resources for its members, including but not limited to hazing policies and alcohol policies.

38. At all times material hereto, Delta Chi was aware that fraternity recruitment, tailgates, and off-campus social events result in alcohol misuse, hazing, open flames, and unsafe initiation/activity rituals that create a recurring risk of serious injury. Notably, a student at Virginia Commonwealth University died in 2021, after being pressured to consume excessive alcohol at an

off-campus Delta Chi party, one of many instances where the fraternity was notified of violative behavior by officers, members, and pledges of its local chapters.

39. At all times material hereto, the University, FSL, IFC and Delta Chi portrayed themselves as safe and trustworthy entities. Plaintiff believed that the University, FSL, IFC, and Delta Chi would not have allowed dangerous circumstances to continue at sanctioned and approved events, such as Party. Further, Plaintiff believed that if University, FSL, IFC, and Delta Chi were learned of dangerous circumstances occurring or persisting at sanctioned and approved events, that each would conduct a prompt and thorough investigation and/or immediately shutdown the event, including the Party.

40. At all times material hereto, the University, FSL, IFC and Delta Chi voluntarily undertook to provide a number of safety-related services for the benefit of individuals, including Plaintiff, who was relying affirmative representations of reliability, safety, and trustworthiness by University, FSL, IFC and Delta Chi. Their safety-related services were in place long before the Subject Incident occurred at the Party.

41. At all times material hereto, the University, FSL, IFC and Delta Chi had the ability to regulate, oversee, and sanction the actions of Delta Chi officers, members, and pledges for violations of rules, regulations, policies, procedures, and laws, nationwide, but more specifically at the University, for behaviors that were violative of the University uniform code of conduct and bylaws, risk management training, and the expectations regarding alcohol possession, furnishing, and conduct. Delta Chi also had the ability to regulate, oversee, and sanction its officers, members, and pledges for violation of internal Michigan Chapter and Delta Chi rules, regulations, policies, and procedures.

42. At all times material hereto, the University, FSL, IFC, and Delta Chi were aware of the dangers associated with alcohol possession, use, and furnishing.

43. At all times material hereto, the University, FSL, and IFC were able to investigate and discipline Delta Chi and its members for conduct on-and-off-campus, as there was a sufficient connection to University through its students; Delta Chi was recognized as a student organization; because the Party was an organization-sponsored activity requiring adherence to the safety considerations of the University, FSL and the IFC; and the Party was sufficiently connected to the University community.

44. At all times material hereto, University, FSL, IFC, and Delta Chi had authority to condition, supervise, suspend, or revoke the Party and chapter privileges. Despite actual notice of the dangerous condition/conduct inherent in alcohol use, possession, and furnishing within the Greek system, University, FSL, IFC, and Delta Chi approved or permitted the event to proceed. The injury of Plaintiff was caused by the approval of University, FSL, IFC and Delta Chi and by the failure of those entities to exercise their control.

45. At all times material hereto, John Doe Members 1-10, John Doe Lessors 1-12, John Doe Beverage Purchaser, and John Doe Flag Burners 1 & 2 were required to act reasonably and with due care for the safety of other individuals. The injury of Plaintiff was caused by the individual and collective failures of each of the Defendants to exercise due care.

46. Additionally, John Doe Members 1-10, John Doe Lessors 1-12, John Doe Beverage Purchaser, and John Doe Flag Burners 1 & 2 were University students and Delta Chi members and duly elected officers of the Michigan Chapter, bound by the standards, rules, policies, and procedures that they were sworn to uphold within the fraternity and by the Code of Conduct at the University, including additional rules, regulations, policies, procedures, laws, and standards that were imposed by the FSL and IFC. As such, they were obliged to act with reasonable prudence and to provide for the reasonable safety of members and pledges of Delta Chi and the reasonable enforcement of certain policies of the fraternity.

47. At all times material hereto, John Doe Lessors 1-12 operated the Subject Property as an extension of the Delta Chi fraternity, hosting its members and guests for social gatherings, and on the date of the Subject Incident, John Doe Lessors 1-12 permitted the Subject Property to be the site of the Party hosted by Delta Chi.

48. The use of the Subject Property as an extension of the Michigan Chapter of Delta Chi happened with such frequency and regularity that it was known and/or reasonably discoverable through the exercise of reasonable care by Property Owner.

49. At all times material hereto, the Subject Property was routinely a gathering place for Delta Chi, particularly on Game Day, so much so that it was reasonably foreseeable to Property Owner that Delta Chi would be hosting a Michigan-Wisconsin Party at the Subject Property, involving the use, possession, and furnishing of alcohol on the premises.

**FACTUAL ALLEGATIONS RE:**
**EVERCLEAR, MGP, JOHN DOE BOTTLE MANUFACTURER,**
**and JOHN DOE BEVERAGE RETAILER**

50. At all times material hereto, the product used to ignite the flag by John Doe Flag Burners 1 & 2 was Everclear 151 (75.5% ABV). ABV (alcohol by volume) is ½ the recorded proof of the product and the percentage of the liquid that is ethanol. Everclear 151 has nearly double the amount of alcohol by volume (ethanol) as a typical vodka (40%). For that reason, Everclear 151 bears product warnings that it is NOT for undiluted consumption. Manufacturer and safety guidance treat Everclear 151 as a high-proof spirit to dilute before drinking, because it can cause rapid, severe intoxication.

51. Everclear 151 is a flammable liquid and should be handled with care.

52. In 2018, Everclear went through a product rebrand that changed the historic white label with clear red advisories and removed an explicit front-label warning. During the rebrand, the following language was completely removed from the front of the bottle:

> "CAUTION: DO NOT APPLY TO OPEN FLAME. KEEP AWAY FROM FIRE, HEAT AND OPEN FLAME – CONTENTS MAY IGNITE OR EXPLODE."

> "CAUTION!! EXTREMELY FLAMMABLE – HANDLE WITH CARE"

> "DO NOT CONSUME IN EXCESSIVE QUANTITIES. NOT INTENDED FOR CONSUMPTION UNLESS MIXED WITH NON-ALCOHOLIC BEVERAGE."

This language was replaced with a darker label that minimizes the effect of the simple statement now found on the on the rear of the bottle, beneath the standard governmental warning, and stating only:

"WARNING: FLAMMABLE LIQUID. HANDLE WITH CARE”

53. The original product label is depicted below:







54. The 2018 rebrand resulted in the label changes, and the new label portrayed below:




55. The new text was scaled down by approximately 85% and moved to the back of the bottle, beneath the standard federal government warning.

56. The rebranding by Everclear makes the extreme flammability and ignition risks far less noticeable to consumers and users, nearly invisible to bystanders.

57. On September 8, 2017, John Rempe, master distiller and blender for Everclear, signed the Alcohol and Tobacco Tax and Trade Bureau (TTB) Form 5100.31 for Certificate of Label Approval (COLA) of the new Everclear labels that drastically reduced safety warnings, certifying under penalty of perjury that he had "read, understood and complied with the conditions and instructions" attached to the form. As a master distiller with extensive expertise in the chemical properties of high-proof spirits, Rempe was intimately familiar with the extreme flammability of Everclear 151 (75.5% ABV) and its propensity for container vapor ignition (flame jetting). With a bachelor's degree in biology from Saint Louis University, certification as a Food Scientist, and over 25 years of experience at Everclear, Rempe possesses specialized knowledge far beyond that of an ordinary person and has particular insight into the safety risks of high proof ethanol.

58. At all times material hereto, Everclear failed to conduct a proper Consumer Product Safety Change Evaluation (PSCE).

59. Industry standards and best practices dictate that manufacturers perform comprehensive risk assessments before:

a. Removing or reducing safety warnings;
b. Changing the intended use of the product, particularly when it relates to high-hazard products;
c. Altering packaging that could affect consumer perception of product risks; or
d. Modifying marketing strategies that could encourage dangerous product uses.

60. A proper Consumer Product Safety Change Evaluation requires manufacturers to:

a. Document proposed changes;
b. Identify all potential hazards associated with the product and introduced by the changes;
c. Assess the likelihood and severity of potential injuries;
d. Consider safer alternative approaches that would maintain or enhance safety;
e. Implement risk mitigation measures; and
f. Verify the effectiveness of any safety measures.

61. At all times material, the label change and product rebranding performed by Everclear did not include a foreseeable flash-fire hazard analysis and, in fact, weakened the risk communication associated with Everclear 151 (75.5% ABV) and omitted feasible mitigation.

62. With the rebrand, Everclear has encouraged its near "cult-status" following to experiment with the highly flammable beverage. The "make it your own" initiative by Everclear

promotes other potential uses of the 120-proof, 151-proof, and 190-proof spirits, while encouraging patrons to find uses beyond beverage consumption. The corporate-level advertising campaign suggests potential for cooking (Cherries Jubilee and optional flambe), cleaning, disinfectant wipes, hand sanitizers, glass and jewelry cleaner, perfumes, aromatherapy, reed diffusers, extracts and tinctures.

63. With all of these many uses, Everclear opens the door for consumers to create their own uses. It promotes and allows individuals to post their own concoctions on the Everclear social media platform(s), where patrons have included recipes for bug sprays and citronella candles.

64. Indeed, Everclear has extended its product uses beyond consumable liquids by advertising its 120-proof, 151-proof, and 190-proof spirits across multiple markets, including Cannabis websites where it is promoted for making tinctures.



PHOTO yanadjan

SPONSORED

# How to Make Cannabis Tinctures With Everclear Grain Alcohol

If you're looking for a smoke-free way to enjoy marijuna, try making a cannabis tincture with the premier high-proof grain alcohol, Everclear.

By Cannabis Now

Published on February 12, 2023

Until the reefer madness rhetoric began and prohibition reared its ugly head, tinctures were the most popular form of cannabis consumption in North America. And for good reason, too. Tinctures are a discreet and convenient way to consume cannabis. Today, cannabis tinctures are regaining popularity, mainly because they're a smokeless consumption method—plus, they're easy to make at home.

Because of its high alcohol content and purity, Everclear grain alcohol has been a staple within the cannabis community for years. The odorless, flavorless and colorless nature of this premier, high-proof grain alcohol is perfect for creating a wide range of cannabis products, including cocktails, edibles, infusions and tinctures.

Cannabis tinctures are traditionally made with food-grade, high-proof grain alcohol to remove terpenes and cannabinoids from the plant's foliage. With a concentration of 95% alcohol by volume (190 proof) and 75.5% (151 proof), Everclear is one of the best choices for making tinctures. That's because the higher the alcohol percentage, the more effectively it dissolves the plant's compounds—resulting in a more efficacious end product.

65. Everclear remains well-known for its flaming drinks.

66. At all times material hereto, Everclear knew or reasonably should have known that its 120-proof, 151-proof, and 190-proof spirits were used for flaming drinks, like the Flaming Angry Dragon, the Flaming Lemon, and the Inferno.

67. Despite its rebranding effort, Everclear continues to offer a product that is highly flammable and highly dangerous.

68. MGP is aware of the dangers posed by the many uses and misues of Everclear 151 (75.5% ABV). Regardless, MGP supports, endorses, and profits from the sale of Everclear 151 (75.5% ABV).

69. At all times material hereto, Everclear 151 (75.5% ABV) has a reported 55°F flash point and a boiling point at or above 100°F.

70. At all times material hereto, Everclear 151 (75.5% ABV) produced ignitable vapors at room temperature, making it extremely dangerous near any ignition source.

71. The National Fire Protection Association (NFPA) classifies liquid fire hazard by flash point and boiling point, not ABV. NFPA 30 is a consensus fire code for the storage, handling, and use of ignitable liquids, providing the hazard classification framework for products like Everclear 151 (75.5% ABV).

72. At all times material hereto, Everclear and MGP knew or reasonably should have known through the exercise of due care that a reported 55°F flash point and a boiling point at or above 100°F places Everclear 151 (75.5% ABV) in a class of products known as Class IB Ignitable Liquids, as determined by the National Fire Protection Association (NFPA 30).

73. The United States Occupational Safety and Health Administration (OSHA) flammable liquid standard 29, C.F.R. § 1910.106 creates workplace storage and handling regulations. Though not authoritative, the workplace standard recognizes that flammable liquids require approved containers, not more than five gallons with a spring-closing lid and spout cover, designed to safely relieve internal pressure if exposed to fire.

74. At all times material hereto, Everclear 151 (75.5 ABV) has the same ignition characteristics as a class of liquids that OSHA/GHS (Globally Harmonized System of Classification and Labelling of Chemicals) has rated as having a Category 2 Hazard Classification. Liquids with a flashpoint below 73.4°F and an initial boiling point above 95°F are required to have shipping containers with the flame pictogram, a signal word "HAZARD" emblazoned on the

packaging, a hazard statement that includes the language "Highly flammable liquid and vapor" and a standard precautionary statement that the product is to be kept "away from heat, hot surfaces, sparks, open flames, and other ignition sources; no smoking." In addition, those liquids are to be used only in a well-ventilated area, so as to control vapor accumulation, and dispensed in conjunction with static discharge protocols to reduce/eliminate static sparking as an ignition source.

75. The Portable Fuel Container Safety Act (PFCSA) regulation, 16 C.F.R. Part 1461 governs flame mitigation devices for commercial/industrial products and settings. There, it incorporates ASTM F3326-21, Standard Specification for Flame Mitigation Devices on Portable Fuel Containers and ASTM F3429/F3429M-24, addressing flame-mitigation-device performance in disposable and prefilled portable fuel containers. The Consumer Product Safety Commission (CPSC) uses these standards to define which portable fuel containers must have a flame-mitigation devices. Among other things, the CPSC uses the PFCSA to regulate ethanol marketed as fuel, including those produced for fireplaces, burners, and torches.

76. At all times material hereto, the Consumer Product Safety Commission (CPSC) issued consumer product advisories and recalls for ethanol fuel containers.

77. The CPSC rule and ASTM standards demonstrate the existence of recognized and feasible means for mitigating a known flame-jetting/flashback/flash-fire risk in portable containers holding high-volatility alcohol/ethanol.

78. Rum manufacturer, Bacardi, publicly discontinued its distribution of Bacardi 151 in 2016. While the product was in production, Bacardi issued statements acknowledging that "all bottles of 151 proof alcohol (75.5% ABV) are well known for their flammable qualities." Bacardi also had a flame protector built into the lid of the Bacardi 151 bottle.

79. At all times material hereto, Everclear and MGP knew or reasonably should have known through the exercise of due care that there were federal safety standards addressing highly volatile, highly flammable liquids, and ignitable liquids, that shared chemical, ignition, and container characteristics with Everclear 151 (75.5% ABV).

80. At all times material hereto, Everclear 151 (75.5 ABV) belongs to the same chemical-hazard family as high-ethanol fuel products; the containers for both hold an ignitable vapor space; an exterior flame can reach the mouth of the bottle and/or pour stream; the use of the

product near open flame is foreseeable, particularly given the rebranding by Everclear; and the inclusion of a flame mitigation device is technologically feasible.

81. At all times material hereto, Everclear 151 (75.5% ABV) shared chemical, ignition and container characteristics with ethanol-based fuel sources.

82. At all times material hereto, Everclear and MGP knew or reasonably should have known through the exercise of due care that flame mitigation devices (flame arrestors) could be included with 120-proof, 151-proof, and 190-proof spirits to reduce the probability of flame propagation.

83. At all times material hereto, the addition of a flame mitigation device (flame arrestor) to the bottles containing Everclear 120-proof, 151-proof, and 190-proof spirits results in a $0.50 cost increase, per bottle.

84. At all times material hereto, Everclear and MGP were aware that their products had been involved in fire-related and explosion-type injuries, similar to that suffered by Plaintiff.

85. In August 2024, an incident occurred at Twisted Trick bar in Dallas, Texas. Two individuals suffered second-and-third-degree burns on their faces and upper extremities, requiring acute medical care, extended hospitalization, and skin grafts, when a "Flaming Pineapple" cocktail exploded after the bartender poured too much of an Everclear high-proof spirit into the cocktail and ignited it.

86. In November 2024, two individuals were injured in a cooking incident, when a dish containing Everclear high-proof spirits erupted in fire; at least one of the individuals required extensive medical treatment and skin grafts.

87. In December 2024, a New York bartender added Everclear high-proof spirits to a flaming shot; three people were injured, one had extensive burns to the face, head, neck, and upper extremities.

88. In May 2025, a Massachusetts Polytech student was severely injured at a fraternity party, where an Everclear high-proof spirit was combined with open flame, resulting in a fireball; the student had primarily third-degree burns to her bilateral lower extremities, neck, hands, and chest that required acute medical care, extended hospitalization, and multiple skin graft surgeries. Suit was filed against Everclear on August 04, 2025, exactly 2 months before the Subject Incident.

89. Each of these incidents were high-profile and resulted in national news publications.

90. At all times material hereto, and well before the occurrence of the Subject Incident, Everclear and MGP knew or reasonably should have known in the exercise of due care that several individuals had been injured by high-proof spirits.

**FACTUAL ALLEGATIONS – ALL DEFENDANTS**

91. Defendants had individual and collective duties, derived from codes, standards, regulations, contracts common-law, and industry best practices.

92. Defendants failed to abide by their individual and collective duties and further failed to act with reasonable care.

93. Plaintiff did not cause or contribute to the flag burning incident on October 4, 2025 and did not cause or contribute to the injuries he sustained. At all times material, Plaintiff was acting prudently and was behaving in a reasonably foreseeable and intended manner.

94. Plaintiff relied upon the knowledge, experience, and expertise of Defendants to provide safe and reliable premises and products.

95. At all times material hereto, Everclear, MGP, John Doe Bottle Manufacturer, and John Doe Beverage Retailer were required to act reasonably and with due care for the safety of other individuals. The injury of Plaintiff was caused by the individual and collective failures of each of the Defendants to exercise due care.

96. The fire on October 4, 2025, was the direct and proximate cause of Plaintiff's bodily injury, pain and suffering, mental anguish, loss of capacity for the enjoyment of life, hospitalization and rehabilitation expenses, medical and nursing expenses, lost wages, and other damages. Plaintiff's losses are permanent and/or continuing, and he will continue to incur damages in the future.

**COUNT I – NEGLIGENCE**

**UNIVERSITY, FSL and IFC**

97. Plaintiff re-alleges and reincorporates by reference all preceding paragraphs.

98. The University, FSL, and IFC knew or reasonably should have known through the exercise of due care that large student gatherings, particularly on Game Day and Michigan-Wisconsin weekend, including but not limited to fraternity events, tailgates, and off-campus social gatherings can involve alcohol misuse and other dangerous conduct creating a foreseeable risk of serious physical injury.

99. The University, FSL, and IFC undertook and/or exercised responsibilities concerning the recognition, administration, regulation, discipline, safety, and risk management of fraternities and IFC-member organizations operating within the University community, including Delta Chi.

100. Through those responsibilities, the University, FSL, and IFC undertook and/or exercised authority relating to fraternity-member conduct, organizational status, chapter governance, hazing prevention, alcohol-related conduct, student safety, event approval, and fraternity-related activities creating foreseeable risks of injury.

101. The University, FSL, and IFC approved, sponsored, sanctioned, regulated, supervised, controlled, monitored, had actual knowledge of the Party and its planned activities, and owed Plaintiff and other foreseeable attendees a duty to exercise reasonable care in performing the oversight, safety, disciplinary, and risk-management functions they undertook.

102. The negligent actions and omissions by the University, FSL, and IFC plead herein arose from activities conducted primarily for the purpose of producing a pecuniary profit and not normally supported by taxes and fees, as such, the proprietary-function exception applies under MCL 691.1413.

103. The duties of the University, FSL, and IFC included the obligation to exercise reasonable care to identify, evaluate, reduce, and respond to foreseeable risks associated with fraternity-related events, including risks arising from alcohol misuse, open flames, overcrowding, inadequate supervision, unsafe event activities, and student misconduct.

104. The University, FSL, and IFC were required to exercise reasonable care in, among other things:

a. Establishing, communicating, implementing, and enforcing applicable rules, policies, procedures, training requirements, and standards concerning fraternity conduct, alcohol use, fire safety, event management, and student safety;

b. Reviewing and evaluating the Party's proposed location, attendance, activities, alcohol-related risks, fire-related risks, supervision needs, and emergency-response arrangements before approving, sanctioning, or permitting the event to proceed;

c. Requiring a reasonable event-safety plan that identified foreseeable hazards, mitigation measures, emergency procedures, responsible organizers, and procedures for communicating and enforcing event conditions;

d. Imposing and enforcing reasonable conditions concerning alcohol, capacity, access control, open flames, security, sober monitoring, and other high-risk activities;

e. Ensuring that organizers and participants understood and complied with applicable University, FSL, IFC, legal, and safety requirements;

f. Providing, requiring, or arranging reasonable supervision, monitoring, security, and emergency-response measures when warranted by the nature of the event and its foreseeable risks;

g. Taking reasonable corrective, protective, or warning measures when unsafe conditions, impaired participants, overcrowding, dangerous conduct, or other foreseeable safety hazards emerged; and

h. Documenting event approvals, conditions, inspections, incidents, violations, and follow-up actions.

105. The University, FSL, and IFC breached their duties by failing to exercise reasonable care in the performance of the oversight, safety, risk-management, disciplinary, and organizational-control functions they undertook with respect to Delta Chi, the Party, and the foreseeable risks created by the Party's activities.

106. Without limitation, the University, FSL, and IFC failed to exercise reasonable care by:

a. Failing to implement, enforce, or require compliance with applicable safety rules, risk-management requirements, and organizational standards governing dangerous fraternity activity;

b. Failing to reasonably review, regulate, supervise, or monitor fraternity-sponsored activities involving alcohol, student gatherings, tailgates, open flames, and other conduct posing a foreseeable risk of catastrophic injury;

c. Failing to require or enforce reasonable safeguards against the use of highly flammable alcohol near an open flame and within a crowded fraternity-related gathering;

d. Failing to reasonably administer, monitor, enforce, or apply policies and procedures intended to prevent dangerous, illegal, hazing-related, alcohol-related, fire-related, or otherwise unsafe conduct by Delta Chi members, pledges, and representatives;

e. Failing to take reasonable measures to protect foreseeable attendees, including Plaintiff, from serious injury arising from unsafe fraternity-related activities; and

f. Failing to take reasonable action in light of the foreseeable danger created when highly flammable alcohol and open flames were introduced into a crowded fraternity-related event.

107. The University, FSL, and IFC acted through their respective and duly authorized officers, directors, members, agents, representatives, and employees, and each is therefore liable for any acts, omissions, or conduct of such persons when performed within the scope of their employment or agency for the organization.

108. As a direct and proximate result of the negligent actions and omissions by the University, FSL, and IFC, Plaintiff sustained severe and permanent injuries and damages.

WHEREFORE, the Plaintiff demands judgment for damages, costs, and prejudgment interest against the Defendants and demands trial by jury of all issues so triable and such other relief the Court deems proper.

**COUNT II – NEGLIGENCE PER SE**

**UNIVERSITY, FSL and IFC**

109. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

110. The University, FSL, and IFC negligently failed to follow applicable University, FSL, IFC, legal, and safety requirements, government regulations, industry standards, best practices, internal rules, policies and procedures that establish a duty of reasonable care for the benefit of University students, including Plaintiff.

111. As a direct and proximate result of the actions and omissions by the University, FSL, and IFC, Plaintiff sustained severe and permanent injuries and damages.

WHEREFORE, the Plaintiff demands judgment for damages, costs, and prejudgment interest against the Defendants and demands trial by jury of all issues so triable and such other relief the Court deems proper.

**COUNT III – NEGLIGENCE**

**DELTA CHI**

112. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

113. Delta Chi publicly adopted and maintained member expectations addressing, among other things, the protection of human health and safety, the avoidance of alcohol abuse, the maintenance of safe chapter property, and members' obligation to confront violations of fraternity obligations.

114. Delta Chi further maintained behavior standards and risk-management resources, including alcohol and hazing policies, for its members and affiliated chapters.

115. Delta Chi knew or reasonably should have known through the exercise of due care that large student gatherings, particularly on Game Day and Michigan-Wisconsin weekend, including but not limited to fraternity events, tailgates, and off-campus social gatherings can involve alcohol misuse and other dangerous conduct creating a foreseeable risk of serious physical injury.

116. Delta Chi owned, possessed, controlled, supplied, authorized the use of, or retained the right to approve or restrict the use of resources and/or instrumentalities and Delta Chi negligently entrusted, permitted, or authorized John Doe Members 1–10, John Doe Lessors 1–12, John Doe Beverage Purchaser, and/or John Doe Flag Burners 1 and 2 to possess, use, furnish, manage, or control those resources and/or instrumentalities, despite actual or constructive knowledge by Delta Chi that the Party involved a crowded fraternity-related gathering, alcohol use and misuse, and a planned flag-burning activity and that highly flammable alcohol used near an open flame would create a foreseeable risk of fire, flame projection, and catastrophic burn injury; reasonable safeguards were necessary to prevent such harm, and Delta Chi's negligent entrustment, authorization, or permission was a factual and proximate cause of Plaintiff's injuries and damages.

117. Delta Chi undertook, retained, or exercised authority to regulate, supervise, approve, condition, investigate, discipline, suspend, or otherwise control the Michigan Chapter, its officers, its members, and/or the Party, and therefore owed foreseeable attendees, including Plaintiff, a duty to exercise reasonable care in the performance of those functions.

118. Delta Chi negligently and unreasonably created and permitted a culture where the conduct of its officers, members, and pledges were allowed to exceed what was permitted by applicable rules, laws, policies, procedures, training requirements, member expectations, and standards both at the University and within the community, at-large, and particularly as it relates to conduct, alcohol use, fire safety, event management, and safety;

119. Delta Chi was required to use reasonable care, within the scope of authority Delta Chi undertook, retained, or exercised, including but not limited to:

a. Communicating and enforcing applicable alcohol-use, fire-safety, event-management, and risk-management requirements;

b. Require reasonable compliance by the Michigan Chapter and its members with Delta Chi's applicable safety and risk-management standards including those adopted by the University, FSL, and IFC;

c. Investigating, addressing, and/or disciplining known violations of applicable fraternity rules and safety requirements;

d. Taking reasonable measures to prevent, stop, or condition fraternity-related activities that Delta Chi knew or reasonably should have known posed an unreasonable risk of serious injury to foreseeable attendees; and

e. Taking reasonable action concerning unsafe fraternity-related conduct when Delta Chi had actual knowledge of that conduct and authority to act.

120. Delta Chi breached its duty of reasonable care by failing to:

a. Reasonably implement or enforce applicable Delta Chi alcohol-use, safety, and risk-management requirements with respect to the Michigan Chapter and the Party, including those adopted by the University, FSL, and IFC;

b. Reasonably address or prevent dangerous alcohol-related activity at a chapter-promoted event;

c. Reasonably act to prevent or stop the use of highly flammable alcohol to ignite or accelerate an open fire in the presence of foreseeable attendees;

d. Reasonably investigate, discipline, suspend, condition, or otherwise respond to conduct violating applicable Delta Chi safety or risk-management standards; and

e. Exercise reasonable care in carrying out the safety and risk-management functions it undertook with respect to the Michigan Chapter and fraternity-related events.

121. The foreseeable consequence of using and/or permitting highly flammable alcohol near an open flame at a crowded fraternity-related event was a flash fire, flame projection, burn injury, or other catastrophic thermal injury.

122. Delta Chi acted through its duly authorized officers, directors, members, agents, representatives, and employees, and is therefore liable for any acts, omissions, or conduct of such persons when performed within the scope of their employment or agency for the organization.

123. As a direct and proximate result of the actions and omissions by the Delta Chi, Plaintiff sustained severe and permanent injuries and damages

WHEREFORE, the Plaintiff demands judgment for damages, costs, and prejudgment interest against the Defendants and demands trial by jury of all issues so triable and such other relief the Court deems proper.

**COUNT IV – NEGLIGENCE PER SE**

**DELTA CHI**

124. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

125. Delta Chi negligently failed to follow applicable Delta Chi, University, FSL, IFC, legal, and safety requirements, government regulations, industry standards, best practices, internal rules, policies and procedures that establish a duty of reasonable care for the benefit of University students, including Plaintiff.

126. As a direct and proximate result of the actions and omissions by Delta Chi the Plaintiff sustained severe and permanent injuries and damages.

WHEREFORE, the Plaintiff demands judgment for damages, costs, and prejudgment interest against the Defendants and demands trial by jury of all issues so triable and such other relief the Court deems proper.

**COUNT V – NEGLIGENCE**

**JOHN DOE MEMBERS 1-10 & JOHN DOE LESSORS 1-12**

127. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

128. John Doe Members 1–10 and John Doe Lessors 1-12, individually and/or collectively, participated in the planning, organization, management, oversight, execution, or facilitation of the Party.

129. Plaintiff was a foreseeable attendee of the Party. Plaintiff attended as a Delta Chi pledge who had been personally invited to attend the gathering at the Subject Property.

130. John Doe Members 1–10 and John Doe Lessors 1-12 owed Plaintiff and other foreseeable attendees a duty to exercise reasonable care in planning, organizing, conducting, supervising, and carrying out the Party and its activities.

131. John Doe Members 1–10 and John Doe Lessors 1-12 undertook or participated in the planning, organization, management, oversight, execution, or facilitation of the Party, and had a duty to exercise reasonable care to identify, evaluate, reduce, and respond to foreseeable risks associated with a crowded fraternity-related gathering, including risks arising from alcohol use and misuse, highly flammable alcohol, open flames, unsafe event activities, inadequate supervision, and dangerous conduct.

132. John Doe Members 1–10 and John Doe Lessors 1-12 were subject to applicable University, FSL, IFC, and Delta Chi rules, policies, procedures, standards, and expectations concerning organizational conduct, alcohol possession, furnishing and use, risk management, and safety.

133. Delta Chi maintained behavior standards and risk-management resources for its members, including alcohol and hazing policies, and represented that its members were expected to protect health and safety, avoid supporting alcohol abuse, maintain safe chapter property, and confront fraternity members who violate fraternity obligations.

134. John Doe Members 1–10 and John Doe Lessors 1-12 breached their duty of reasonable care by failing to exercise reasonable care in planning, organizing, conducting, supervising, monitoring, and/or carrying out the Party.

135. Without limitation, John Doe Members 1–10 and John Doe Lessors 1-12 negligently failed to:

a. Exercise reasonable care for the safety of Plaintiff and other foreseeable attendees in planning, organizing, managing, supervising, or executing the Party;
b. Follow or reasonably implement applicable University, FSL, IFC, and Delta Chi rules, policies, procedures, standards, and expectations concerning alcohol, organizational conduct, risk management, and safety;
c. Use available Delta Chi behavior standards and risk-management resources reasonably in connection with the Party;
d. Reasonably assess and address foreseeable hazards associated with a crowded fraternity-related event involving alcohol use and a planned flag-burning activity;

e. Reasonably oversee and monitor Party activities for unsafe conditions or conduct;

f. Take reasonable steps to prevent, stop, warn against, or report dangerous conduct involving the use of highly flammable alcohol near an open flame;

g. Halt, suspend, modify, or seek assistance regarding dangerous Party activities when a reasonably prudent person in the same or similar circumstances would have recognized an unreasonable risk of serious injury; and

h. Take reasonable measures to protect foreseeable attendees, including Plaintiff, from the risk of fire, flame projection, and catastrophic thermal injury created by the use of Everclear 151 to ignite or accelerate a flag fire.

136. The foreseeable consequences of using highly flammable alcohol near an open flame during a crowded fraternity-related event included fire, flame projection, burn injury, and other catastrophic thermal injury.

137. John Doe Members 1-10 and John Doe Lessors 1-12 negligently permitted John Doe Flag Burners 1 and 2 to use conduct an extremely dangerous flag-burning activity using Everclear 151 to ignite and accelerate the fire.

138. The acts and omissions of John Doe Members 1–10 and John Doe Lessors 1-12, with respect to their planning, organizing, managing, overseeing, or executing the Party and their failure to exercise reasonable care, were a factual and proximate cause of the Subject Incident and Plaintiff's resulting injuries and damages.

139. As a direct and proximate result of the actions and omissions by the John Doe Members 1-10 and John Doe Lessors 1-12, Plaintiff sustained severe and permanent injuries and damages

WHEREFORE, the Plaintiff demands judgment for damages, costs, and prejudgment interest against the Defendants and demands trial by jury of all issues so triable and such other relief the Court deems proper.

**COUNT VI – NEGLIGENCE PER SE**

**JOHN DOE MEMBERS 1-10 & JOHN DOE LESSORS 1-12**

140. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

141. John Doe Members 1-10 and John Doe Lessors 1-12 negligently failed to follow applicable Delta Chi, University, FSL, IFC, legal, and safety requirements, government

regulations, industry standards, best practices, internal rules, policies and procedures that establish a duty of reasonable care for the benefit of University students, including Plaintiff.

142. As a direct and proximate result of the actions and omissions by John Doe Members 1-10 and John Doe Lessors 1-12, Plaintiff sustained severe and permanent injuries and damages.

WHEREFORE, the Plaintiff demands judgment for damages, costs, and prejudgment interest against the Defendants and demands trial by jury of all issues so triable and such other relief the Court deems proper.

**COUNT VII – NEGLIGENCE**

**PROPERTY OWNER & JOHN DOE LESSORS 1-12**

143. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

144. Property Owner and John Doe Lessors 1-12 knew or, through the exercise of reasonable care, should have known that the Subject Property was regularly used as a gathering place for Delta Chi, particularly on Game Day, and that Delta Chi would host a Michigan-Wisconsin Party at the Subject Property involving the use, possession, and furnishing of alcohol.

145. Plaintiff was a foreseeable invitee at the Subject Property.

146. Property Owner and John Doe Lessors 1–12 each owed Plaintiff a duty to exercise reasonable care in the ownership, possession, control, operation, management, use, and supervision of the Subject Property.

147. Property Owner and John Doe Lessors 1–12 breached their duties of reasonable care by, among other things:

a. Failing to exercise reasonable care for the safety of Plaintiff and other foreseeable invitees at the Subject Property;

b. Failing to reasonably inspect, monitor, manage, or supervise the Subject Property in light of its regular use for Delta Chi social gatherings and Game Day events;

c. Failing to reasonably identify and address foreseeable risks associated with a crowded fraternity-related gathering involving alcohol use at the Subject Property;

d. Failing to establish, communicate, or enforce reasonable conditions for the use of the Subject Property during the Party;

e. Failing to take reasonable steps to prevent, stop, modify, warn against, or seek assistance concerning the dangerous flag-burning activity occurring in the yard of the Subject Property;

f. Failing to take reasonable steps to prevent the use of highly flammable alcohol near an open flame and a crowd of foreseeable attendees; and

g. Failing to take reasonable measures to protect Plaintiff and other invitees from the foreseeable risk of fire, flame projection, and catastrophic thermal injury.

148. The use of Everclear 151 to ignite and accelerate a fire on a flag near an open flame and in the presence of a crowd created a foreseeable risk of fire, flame projection, and severe burn injury.

149. Property Owner and John Doe Lessors 1-12 negligently permitted John Doe Flag Burners 1 and 2 to use conduct an extremely dangerous flag-burning activity using Everclear 151 to ignite and accelerate the fire.

150. As a direct and proximate result of the actions and omissions by the Property Owner and John Doe Lessors 1-12, Plaintiff sustained severe and permanent injuries and damages

WHEREFORE, the Plaintiff demands judgment for damages, costs, and prejudgment interest against the Defendants and demands trial by jury of all issues so triable and such other relief the Court deems proper.

## COUNT VIII – NEGLIGENCE PER SE
## PROPERTY OWNER

151. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

152. Property Owner negligently failed to follow applicable government regulations, industry standards, best practices, internal rules, policies and procedures that establish a duty of reasonable care for the benefit of invitees on the Subject Property, including Plaintiff.

153. As a direct and proximate result of the actions and omissions by Property Owner, Plaintiff sustained severe and permanent injuries and damages.

WHEREFORE, the Plaintiff demands judgment for damages, costs, and prejudgment interest against the Defendants and demands trial by jury of all issues so triable and such other relief the Court deems proper.

**COUNT IX – PREMISES LIABILITY**

**PROPERTY OWNER & JOHN DOE LESSORS 1-12**

154. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

155. At all relevant times, Property Owner owned, operated, and controlled the Subject Property.

156. At all relevant times, John Doe Lessors 1–12 possessed and controlled the Subject Property under the residential lease.

157. Plaintiff was an invitee at the Subject Property. Plaintiff attended the Party as a Delta Chi pledge who was personally invited to the gathering at the Subject Property.

158. The Subject Property was used as the site of a crowded Delta Chi-related Party involving alcohol use, a stage constructed in the yard, and a planned flag-burning activity.

159. The stage and yard area at the Subject Property were used as the location from which John Doe Flag Burners 1 & 2 used Everclear 151 to ignite and accelerate a flag fire while Party attendees, including Plaintiff, gathered nearby.

160. The use of the Subject Property for a crowded Party involving a stage, an open flame, and highly flammable alcohol created an unreasonable risk of serious harm to invitees, including Plaintiff, and involving the foreseeable risk of fire, flame projection, and catastrophic burn injury.

161. Property Owner and John Doe Lessors 1–12 knew or should have known of the recurring use of the Subject Property as a Delta Chi gathering place, including for Game Day events involving alcohol.

162. Property Owner and John Doe Lessors 1–12 owed Plaintiff, as an invitee, a duty to exercise reasonable care to protect him from unreasonable risks of harm associated with the condition and use of the Subject Property.

163. Property Owner and John Doe Lessors 1–12 breached their duties by failing to:

a. Maintain the Subject Property in a reasonably safe condition for invited guests during the Party;

b. Reasonably inspect and monitor the yard and stage area used for the Party;

c. Reasonably identify and address the dangerous condition created by the use of a stage, open flame, highly flammable alcohol, and a crowd of nearby attendees in the yard of the Subject Property;

d. Warn Plaintiff and other invitees of the unreasonable danger associated with the flag-burning activity and the use of highly flammable alcohol near an open flame;

e. Take reasonable measures to stop, modify, restrict, or otherwise make safe the dangerous activity occurring on the Subject Property; and

f. Take reasonable measures to protect Plaintiff and other invitees from the foreseeable risk of a flash fire, flame projection, and severe thermal injury.

164. The dangerous condition and use of the Subject Property caused or contributed to the Subject Incident.

165. As a direct and proximate result of the actions and omissions by the Property Owner and John Doe Lessors 1-12, Plaintiff sustained severe and permanent injuries and damages

WHEREFORE, the Plaintiff demands judgment for damages, costs, and prejudgment interest against the Defendants and demands trial by jury of all issues so triable and such other relief the Court deems proper.

## COUNT X – NEGLIGENCE
## JOHN DOE BEVERAGE PURCHASER

166. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

167. At all relevant times, John Doe Beverage Purchaser attended, participated in, and/or assisted with the Party.

168. John Doe Beverage Purchaser purchased from John Doe Beverage Retailer a bottle of Everclear 151, an alcoholic beverage containing 75.5% alcohol by volume, for use at the Party.

169. The Party was a fraternity-related gathering involving Delta Chi members, pledges, guests, alcohol, and a planned flag-burning activity.

170. The Party was unsupervised and/or inadequately supervised.

171. John Doe Beverage Purchaser knew or reasonably should have known that Everclear 151 was highly flammable and that its use near an open flame presented a foreseeable risk of fire, flame projection, and catastrophic burn injury.

172. John Doe Beverage Purchaser owed Plaintiff and other foreseeable Party attendees a duty to exercise reasonable care in purchasing, furnishing, handling, controlling, and entrusting Everclear 151 for use at the Party.

173. John Doe Beverage Purchaser breached that duty by purchasing Everclear 151 for use and consumption at the Party under circumstances involving an unsupervised and/or inadequately supervised fraternity-related gathering, alcohol use, where there was a planned flag-burning activity.

174. John Doe Beverage Purchaser further negligently entrusted, furnished, supplied, delivered, or otherwise made Everclear 151 available to John Doe Flag Burners 1 & 2 for use in connection with the flag-burning activity.

175. John Doe Beverage Purchaser knew or reasonably should have known that entrusting Everclear 151 to John Doe Flag Burners 1 & 2 for use near an open flame created an unreasonable and foreseeable risk that the alcohol would ignite, project flame, cause a flash fire, or otherwise inflict serious burn injuries on nearby attendees.

176. John Doe Beverage Purchaser further breached the duty of reasonable care by failing to:

a. Exercise reasonable care in purchasing and furnishing Everclear 151 for use at the Party;

b. Recognize and account for the foreseeable danger associated with using or furnishing highly flammable alcohol at a crowded, unsupervised and/or inadequately supervised Party;

c. Prevent or avoid furnishing Everclear 151 for use near an open flame;

d. Take reasonable steps to prevent John Doe Flag Burners 1 & 2 from using Everclear 151 to ignite or accelerate a fire; and

e. Warn Plaintiff and other foreseeable attendees of the danger created by using Everclear 151 near an open flame.

177. During the Party, John Doe Flag Burners 1 & 2 used Everclear 151 to ignite and accelerate a flag fire.

178. When an open flame was introduced to the Everclear 151 bottle, a fireball left the stage and ignited Plaintiff’s upper body.

179. As a direct and proximate result of the actions and omissions by the John Doe Beverage Purchaser, Plaintiff sustained severe and permanent injuries and damages.

WHEREFORE, the Plaintiff demands judgment for damages, costs, and prejudgment interest against the Defendants and demands trial by jury of all issues so triable and such other relief the Court deems proper.

**COUNT VI – NEGLIGENCE PER SE**

**JOHN DOE BEVERAGE PURCHASER**

180. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

181. John Doe Beverage Purchaser negligently failed to follow applicable University, FSL, IFC, legal, and safety requirements, government regulations, industry standards, best practices, internal rules, policies and procedures that establish a duty of reasonable care for the benefit of University students, including Plaintiff.

182. As a direct and proximate result of the actions and omissions by John Doe Beverage Purchaser, Plaintiff sustained severe and permanent injuries and damages.

WHEREFORE, the Plaintiff demands judgment for damages, costs, and prejudgment interest against the Defendants and demands trial by jury of all issues so triable and such other relief the Court deems proper.

**COUNT VII – PRODUCT LIABILITY – DEFECTIVE DESIGN**

**EVERCLEAR**

183. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

184. Everclear owed a non-delegable duty to use reasonable care in the manufacture, design, packaging, and distribution of its products, including Everclear 151 (75.5% ABV). Accordingly, Everclear was to guard against reasonably foreseeable harm and hazards, including but not limited to those associated with heat, fire, open flame, and ignition; to provide reasonably adequate warnings and instructions for foreseeable uses and misuses of its products; to avoid marketing or instructions that encourage a hazardous use; to ensure that bottles, closures, safety components conform to their intended design and do not create foreseeable risks; and to warn of newly discovered or materially increased risks when Everclear knew or reasonably should have known of a substantial danger, could identify persons who needed the warning, and could effectively communicate the risk at reasonable cost.

185. Everclear marketed, sold, distributed, and otherwise placed Everclear 151 (75.5% ABV) into the stream of commerce for sale and use by consumers, including consumers in Michigan.

186. At the time Everclear 151 (75.5% ABV) left the control of Everclear, it presented foreseeable risks of ignition, flame propagation, flash fire, flame jetting, and burning-liquid discharge that would foreseeably result in severe burn injury, permanent disfigurement, and death to consumers, users, and those in close proximity.

187. As the maker of Everclear 151 (75.5% ABV), Everclear knew the risks, or should have known them in the exercise of reasonable care.

188. Everclear also knew or should have known in the exercise of reasonable care that consumers could use, mishandle, or misuse high-proof Everclear 151 (75.5% ABV) in settings involving heat, fire, open flame, and ignition sources, including those present at social gatherings and parties, during cooking activities, in making flaming drinks.

189. At all relevant times, Everclear designed, manufactured and/or specified the design and packaging requirements for, marketed, distributed, and placed into the stream of commerce the Everclear 151 (75.5% ABV) product used in the Subject Incident.

190. The high-proof, ethanol product was sold in a necked bottle, and was capable of producing ignitable vapors.

191. The foreseeable risks associated with the design included ignition and vapor ignition near the bottle opening, propagation of flame into the bottle, rapid expansion of ignitable vapor, expulsion of burning liquid, flame projection, and flash fire, resulting in severe thermal injury, permanent scarring, disfigurement, and death.

192. Those risks were reasonably foreseeable to Everclear at the time the subject Everclear 151 (75.5% ABV) product left Everclear's control.

193. Everclear knew or should have known in the exercise of reasonable care that its high-proof ethanol products were substantially more flammable than ordinary spirits and could be introduced to heat, fire, open flame, and ignition sources.

194. After its product rebranding, Everclear encouraged consumers to "make it [their] own". That specific promotion made more likely that individuals would attempt uses of the product that went beyond the normal beverage consumption, and that among those uses, Everclear 151 (75.5% ABV) would be introduced to heat, fire, open flame, and ignitions sources. It was

reasonably foreseeable to Everclear that such use would occur, as a result of its product rebranding and marketing efforts.

195. Before rebranding in 2018, Everclear provided specific warnings that Everclear 151 (75.5% ABV) should not be applied to an open flame, so that the contents of the container would not ignite and/or explode.

196. The rebranding efforts of Everclear removed important warnings and limitations from the bottle label on Everclear 151 (75.5% ABV).

197. When the subject bottle was manufactured, designed, packaged and distributed, there were practical and technically feasible alternatives that could have made the product safe(r) to consumers, users, and those in close relative proximity. Those alternatives were available when the bottle of Everclear 151 (75.5% ABV) left Everclear's control.

198. Everclear was able and chose not to incorporate a flame-mitigation devices and/or flame arrestors at the bottle opening of its high-proof spirits, including Everclear 151 (75.5% ABV). Such measures would have inhibited flame propagation into the bottle and reduced the risk of flame jetting.

199. A flame-mitigation device was practical, technically feasible, and available at the relevant time; its use would have prevented or materially reduced the risk of flame propagation, flame jetting, propagation, fireball formation, and the resulting burn injury.

200. A reasonable manufacturer, with knowledge of the high-proof ethanol content associated with Everclear 151 (75.5% ABV) and an understanding of its ignition characteristics, foreseeable use environments, and the available flame-arresting technology, would have adopted a safer alternative design, including but not limited to changes in the bottle design and pour spout and/or the inclusion of a flame arrestor or other flame mitigation device.

201. This omission by Everclear rendered Everclear 151 (75.5% ABV) not reasonably safe at the time it left the control of Everclear.

202. Had Everclear incorporated a reasonably designed and effective flame-mitigation device, or any other available safety measure(s) to make the product safer, the Subject Incident would have been prevented or materially reduced.

203. The defective design of Everclear was a factual and proximate cause of Plaintiff's injuries.

204. As a direct and proximate result of the actions and omissions by Everclear, the Plaintiff sustained severe and permanent injuries and damages

WHEREFORE, the Plaintiff demands judgment for damages, costs, and prejudgment interest against the Defendants and demands trial by jury of all issues so triable and such other relief the Court deems proper.

**COUNT VIII – PRODUCT LIABILITY – FAILURE TO WARN**

**EVERCLEAR**

205. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

206. Before its 2018 packaging change, Everclear 151 (75.5% ABV) bore specific warnings addressing the precise fire hazard at issue, including:

a. “CAUTION: DO NOT APPLY TO OPEN FLAME”;

b. “KEEP AWAY FROM FIRE, HEAT AND OPEN FLAME”;

c. “CONTENTS MAY IGNITE OR EXPLODE”; and

d. “EXTREMELY FLAMMABLE—HANDLE WITH CARE.”

207. As a result of the Everclear rebranding effort, the warning on Everclear 151 (75.5% ABV) was reduced to: “WARNING: FLAMMABLE LIQUID. HANDLE WITH CARE.” That limitation was placed on the rear label beneath the standard governmental alcohol warning.

208. The Everclear rebranding effort invited consumers to use Everclear 151 (75.5% ABV) in a variety of ways. Everclear exclaimed that its product was “YOUR LIQUID CANVAS, A CLEAN SLATE” and issued “AN OPEN INVITATION TO MAKE IT YOUR OWN.”

209. A reasonably prudent manufacturer of high-proof ethanol would have provided a conspicuous, specific, and direct warning adequate to communicate that:

a. the liquid and its vapors can ignite at ordinary ambient temperatures;

b. the product must not be used, poured, applied, or dispensed near flames, sparks, heat sources, or other ignition sources;

c. ignition near or at the bottle mouth can cause flame to travel into the bottle and create a dangerous fireball that has the ability to propagate and form a dangerous flame jet;

d. the product must not be poured directly from the bottle onto or near fire, open flame, hot surfaces, flaming drinks, or flaming food; and

e. users should keep the bottle closed and away from any active flame before, during, and after use.

210. The general warning "FLAMMABLE LIQUID. HANDLE WITH CARE," standing alone, was and is inadequate to communicate the specific and extreme risk that high-proof ethanol vapor could ignite at the bottle opening and create a projected fireball or flame jet.

211. The warning was especially inadequate because Everclear promoted Everclear 151 (75.5% ABV) as a multipurpose product beyond ordinary beverage consumption, including for uses potentially occurring near hot surfaces associated with cooking and near open flame / ignition sources.

212. The failure to provide adequate warnings and directions rendered the Everclear 151 (75.5% ABV) not reasonably safe.

213. Adequate warnings and instructions could have reduced the foreseeable harm and actual harm to consumers, users, and those in close proximity.

214. An adequate warning would have prevented or materially reduced the likelihood that Everclear 151 (75.5% ABV) would be used to ignite or accelerate a flag fire while persons stood nearby.

215. The inadequacy of the warnings was a factual and proximate cause of Plaintiff's injuries.

216. As a direct and proximate result of the actions and omissions by Everclear, the Plaintiff sustained severe and permanent injuries and damages

WHEREFORE, the Plaintiff demands judgment for damages, costs, and prejudgment interest against the Defendants and demands trial by jury of all issues so triable and such other relief the Court deems proper.

## COUNT IX– PRODUCT LIABILITY – FAILURE TO WARN / NEGLIGENT UNDERTAKING – EVERCLEAR

217. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

218. Everclear had superior knowledge concerning the safe handling and use of Everclear 151 (75.5% ABV).

219. Everclear undertook to communicate safety information concerning flammability by including a flammability warning on its packaging.

220. Everclear also undertook to influence the manner in which consumers used Everclear 151 (75.5% ABV) by marketing the product as a versatile, multipurpose product and by promoting uses extending beyond ordinary beverage consumption.

221. Everclear marketed and distributed Everclear 151 (75.5%ABV) without adequate instructions and warnings to reasonably inform consumers and users of the product.

222. Reasonable instructions would have directed users not to:

a. use Everclear 151 to light, accelerate, or revive a fire;

b. pour Everclear 151 from the bottle near a heat source, fire, open flame, and/or ignition source;

c. hold, tilt, or dispense the bottle where ignitable vapors could contact flame;

d. use the product around spectators or in crowded settings where flame projection could reach bystanders; and

e. use the product for flaming activities, absent appropriate safety controls and separation from others.

223. Having undertaken to provide safety-related warnings, directions, and product-use communications, Everclear had a duty to exercise reasonable care in performing that undertaking.

224. Everclear failed to exercise reasonable care because it:

a. reduced and removed prior explicit warnings against applying the product to open flame and against use near fire and heat;

b. failed to provide adequate instruction concerning the risk of vapor ignition, flame jetting, and flame propagation and fireball formation;

c. failed to provide warnings proportionate to the danger presented by 75.5% alcohol-by-volume ethanol; and

d. promoted the product's versatility while failing to communicate adequate limitations and precautions for foreseeable flame-related hazards.

225. Everclear negligently performed its voluntary undertaking and increased the risk of harm to foreseeable users, handlers, bystanders, and persons exposed to the product's use.

226. But for negligent warnings, instructions, packaging, and product-use communications, by Everclear, the likelihood that Everclear 151 (75.5% ABV) would be used near an open flame without adequate appreciation of its specific flame-projection hazard would have been reduced.

227. Reasonably adequate instructions would have advised users to keep the container closed when not actively dispensing, to recognize that vapors near the bottle mouth may ignite and cause sudden flame projection, and to remove it from ignition sources.

228. Everclear failed to provide those reasonably necessary instructions rendering Everclear 151 (75.5 ABV) not reasonably safe.

229. The negligent undertaking / absence of adequate instructions and warnings as a factual and proximate cause of the Subject Incident and Plaintiff's resulting injuries.

230. As a direct and proximate result of the actions and omissions by Everclear, the Plaintiff sustained severe and permanent injuries and damages

WHEREFORE, the Plaintiff demands judgment for damages, costs, and prejudgment interest against the Defendants and demands trial by jury of all issues so triable and such other relief the Court deems proper.

**COUNT X - NEGLIGENCE**

**EVERCLEAR**

231. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

232. Everclear owed foreseeable users, handlers, consumers, and persons foreseeably affected by Everclear 151 (75.5% ABV) a duty to exercise reasonable care in the product's design, packaging, warnings, instructions, marketing, distribution, and post-sale safety conduct.

233. Plaintiff was person who could be foreseeably affected by Everclear 151 (75.5% ABV) because high-proof alcohol was marketed and distributed for consumer use and was foreseeably present at social gatherings involving young adults, food, beverages, alcohol, and open flames, particularly after the 2018 rebranding campaign by Everclear.

234. Everclear knew or should have known through the exercise of reasonable care that Everclear 151 (75.5% ABV) had a high ethanol content and was highly flammable.

235. Everclear knew or should have known through the exercise of reasonable care that introduction of flame to Everclear 151 (75.5% ABV) or its vapors could result in a flash fire, flame jet, fireball, flame propagation, and projected burning liquid, resulting in severe thermal injury, permanent disfigurement, and death.

236. The negligent conduct of Everclear includes, but is not limited to:

a. marketing and distributing high-proof Everclear 151 (75.5% ABV) in a bottle without a reasonably available flame-mitigation device;

b. failing to retain or provide a conspicuous, specific warning against use near heat, fire, and open flame;

c. failing to provide adequate instructions addressing the risk of flame propagation, fireball formation and flame projection when high-proof alcohol is poured or handled near an ignition source;

d. failing to reasonably evaluate the safety consequences of reducing explicit warnings that previously warned consumers not to apply the product to open flame and that the contents could ignite or explode;

e. failing to reasonably account for foreseeable non-beverage use, foreseeable misuse, and foreseeable handling near flames; and

f. marketing Everclear 151 (75.5% ABV) as a versatile or multipurpose product without providing warnings and instructions commensurate with the foreseeable ignition hazards of high-proof ethanol.

237. The negligent acts and omissions described above created an unreasonable risk that Everclear 151 (75.5% ABV) would be used near an ignition source without adequate understanding of the product's specific flame propagation, fireball formation, flame jetting, and flame-projection hazard.

238. The negligence of Everclear was a factual and proximate cause of Plaintiff's injuries and damages.

239. As a direct and proximate result of the actions and omissions by Everclear, the Plaintiff sustained severe and permanent injuries and damages.

WHEREFORE, the Plaintiff demands judgment for damages, costs, and prejudgment interest against the Defendants and demands trial by jury of all issues so triable and such other relief the Court deems proper.

**COUNT XI - BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**

**EVERCLEAR**

240. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

241. Everclear was a merchant with respect to Everclear 151 (75.5% ABV).

242. Everclear sold, distributed, and placed Everclear 151 (75.5% ABV)into the stream of commerce.

243. At the time the subject bottle of Everclear 151 (75.5% ABV) left Luxco's control, it was not fit for the ordinary purposes for which high-proof grain alcohol is sold and used because it lacked reasonably safe design features, warnings, and instructions concerning the foreseeable risk of ignition, flame jetting, flame propagation, fireball formation, and severe burn injury.

244. The ordinary and foreseeable uses of Everclear 151 (75.5% ABV) included handling, transporting, dispensing, mixing, and using the product in consumer settings where heat, fire, open flame, and other ignition sources may be present.

245. The product's risks were not adequately disclosed through reasonably conspicuous warnings and instructions.

246. The product was therefore not merchantable because it was not reasonably safe for its ordinary and foreseeable uses.

247. Plaintiff was a person whom Everclear reasonably could have expected to use, consume, or be affected by Everclear 151 (75.5% ABV).

248. Plaintiff need not have directly purchased the product to pursue this claim. MCL 440.2318 extends warranty protection to a person whom the manufacturer, seller, lessor, or supplier reasonably could have expected to use, consume, or be affected by the goods.

249. The breach of implied warranty was a factual and proximate cause of the Subject Incident and Plaintiff's injuries.

250. As a direct and proximate result of the breach by Everclear, the Plaintiff sustained severe and permanent injuries and damages.

WHEREFORE, the Plaintiff demands judgment for damages, costs, and prejudgment interest against the Defendants and demands trial by jury of all issues so triable and such other relief the Court deems proper.

**COUNT XII - BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE - EVERCLEAR**

251. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

252. Everclear knew, or had reason to know, that consumers purchased and used Everclear 151(75.5% ABV) for purposes beyond direct beverage consumption, including extraction, infusing, fortifying, culinary, household, and other multipurpose uses.

253. Everclear represented Everclear 151 (75.5% ABV) as having “a unique ability to extract flavor” and as an “open invitation to make it your own.”

254. To the extent the Everclear 151 (75.5% ABV) involved in this incident was purchased or supplied for a particular non-ordinary purpose known to Everclear through its marketing and representations, Everclear impliedly warranted that the product was fit for that purpose.

255. Everclear 151 (75.5% ABV) was not fit for a foreseeable particular purpose involving handling or use in a setting where an ignition source could be present because it lacked adequate safety design, warnings, and instructions addressing the danger of sudden ignition, flame jetting, propagation and fireball formation.

256. The product’s unfitness for that foreseeable particular purpose was a factual and proximate cause of Plaintiff’s injuries.

257. As a direct and proximate result of the breach by Everclear, the Plaintiff sustained severe and permanent injuries and damages

WHEREFORE, the Plaintiff demands judgment for damages, costs, and prejudgment interest against the Defendants and demands trial by jury of all issues so triable and such other relief the Court deems proper.

**COUNT XIII – NEGLIGENCE – MGP**

258. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

259. MGP acquired Everclear on April 1, 2021 and thereafter adopted Everclear 151 (75.5% ABV) as one of its products, which it promoted and marketed.

260. MGP profited from the sale of Everclear 151 (75.5% ABV).

261. MGP exercised control over, participated in, approved, and/or assumed responsibility for product-level decisions, including but not limited to safety, packaging, warning, marketing, distribution, and post-sale corrective-action decisions concerning Everclear 151 (75.5% ABV).

262. MGP's own acts and omissions contributed to the inadequate warning and foreseeable fire hazard that injured Plaintiff.

263. As the parent company to Everclear, MGP obtained or controlled relevant safety information after April 1, 2021 and MGP had a practical ability to influence warnings, distributor communications, product labeling, marketing restrictions, recalls, or other corrective action.

264. MGP owed foreseeable users, handlers, consumers, and persons foreseeably affected by Everclear 151 (75.5% ABV) a duty to exercise reasonable care in the product's design, packaging, warnings, instructions, marketing, distribution, and post-sale safety conduct.

265. Plaintiff was person who could be foreseeably affected by Everclear 151 (75.5% ABV) because high-proof alcohol was marketed and distributed for consumer use and was foreseeably present at social gatherings involving young adults, food, beverages, alcohol, and open flames, particularly after the 2018 rebranding campaign by Everclear.

266. MGP knew or should have known through the exercise of reasonable care that Everclear 151 (75.5% ABV) had a high ethanol content and was highly flammable.

267. MGP knew or should have known through the exercise of reasonable care that introduction of flame to Everclear 151 (75.5% ABV) or its vapors could result in a flash fire, flame jet, fireball, flame propagation, and projected burning liquid, resulting in severe thermal injury, permanent disfigurement, and death.

268. The negligent conduct of MGP includes, but is not limited to:

a. marketing and distributing high-proof Everclear 151 (75.5% ABV) in a bottle without a reasonably available flame-mitigation device;

b. failing to retain or provide, or require Everclear to provide, a conspicuous, specific warning against use near heat, fire, and open flame;

c. failing to provide, or require Everclear to provide, adequate instructions addressing the risk of flame propagation, fireball formation and flame projection when high-proof alcohol is poured or handled near an ignition source;

d. failing to reasonably evaluate the safety consequences of reducing explicit warnings that previously warned consumers not to apply the product to open flame and that the contents could ignite or explode;

e. failing to reasonably account for foreseeable non-beverage use, foreseeable misuse, and foreseeable handling near flames; and

f. marketing, and allowing Everclear to market, Everclear 151 (75.5% ABV) as a versatile or multipurpose product without providing warnings and instructions commensurate with the foreseeable ignition hazards of high-proof ethanol.

269. The negligent acts and omissions described above created an unreasonable risk that Everclear 151 (75.5% ABV) would be used near an ignition source without adequate understanding of the product's specific flame propagation, fireball formation, flame jetting, and flame-projection hazard.

270. The negligence of MGP was a factual and proximate cause of Plaintiff's injuries and damages.

271. As a direct and proximate result of the actions and omissions by MGP, the Plaintiff sustained severe and permanent injuries and damages

WHEREFORE, the Plaintiff demands judgment for damages, costs, and prejudgment interest against the Defendants and demands trial by jury of all issues so triable and such other relief the Court deems proper.

**COUNT XIV – PRODUCT LIABILITY – DEFECTIVE DESIGN OF BOTTLE/CLOSURE ASSEMBLY – JOHN DOE BOTTLE MANUFACTURER**

272. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

273. John Doe Bottle Manufacturer had a non-delegable duty to use reasonable care in the manufacture and design of its products, to guard against reasonably foreseeable harm and hazards, including those that arise from the contents added by third parties, to the extent that John Doe Bottle Manufacturer was aware of such; to provide reasonably adequate warnings and instructions for foreseeable uses and misuses of its products; to avoid marketing or instructions

that encourage a hazardous use; to ensure that bottles containing hazardous and/or flammable liquids come complete with appropriate closures and safety components (*i.e.*, flame arrestors / flame mitigation devices); and to warn of newly discovered or materially increased risks when John Doe Bottle Manufacturer knew or reasonably should have known of a substantial danger, could identify persons who needed the warning, and could effectively communicate the risk at reasonable cost.

274. John Doe Bottle Manufacturer designed, engineered, manufactured, assembled, supplied, and/or placed into the stream of commerce the subject bottle, bottle-and-closure assembly, pour opening, closure component, or other container system used to package and distribute Everclear 151 (75.5% ABV).

275. At all relevant times, Bottle Manufacturer knew, or in the exercise of reasonable care should have known, that the subject bottle was intended to contain, package, transport, and dispense Everclear 151, a high-proof ethanol product alleged to contain 75.5% alcohol by volume.

276. At all relevant times, Bottle Manufacturer knew, or in the exercise of reasonable care should have known, that a necked portable container holding high-proof ethanol could contain a flammable vapor space and, when tilted or poured near an ignition source, could permit flame propagation through the opening into the container.

277. It was and is reasonably foreseeable that the product would be used and misused in the presence of heat, flame, open flame, and ignition sources, particularly given the rebranding efforts of Everclear in 2018.

278. The foreseeable consequences of flame propagation into a necked bottle containing high-proof ethanol include rapid ignition of the container's vapor space, displacement and expulsion of burning liquid through the bottle opening, flame projection and flame jetting, and fireball formation, resulting in severe burns, permanent disfigurement, and death.

279. The subject bottle and closure assembly were defective and not reasonably safe when they left John Doe Bottle Manufacturer's control because they lacked a reasonably designed, practical, and feasible flame-mitigation feature capable of materially reducing flame propagation into the bottle and the resulting risk of flame jetting or burning-liquid expulsion.

280. At the time the subject bottle left Bottle Manufacturer's control, one or more practical and technically feasible alternative production practices were available, including, but not limited to:

a. a flame-arresting screen or flame-mitigation insert at the bottle opening;

b. a closure, cap, or bottle-neck design that reduces or interrupts flashback into the bottle;

c. a flow-restricting or controlled-pour mechanism that reduces rapid discharge of liquid during a foreseeable flame-propagation event;

d. engineering control(s) that reduce(s) the likelihood or severity of flame propagation, flame jetting, or expulsion of burning ethanol from a necked container; and/or

e. bottle re-design to reduce/eliminate flammable vapor space associated with flame jetting.

281. Flame arrestors are an available engineering control designed to inhibit flame propagation into necked portable containers containing flammable liquids.

282. A properly designed and effective flame-mitigation device would have prevented, interrupted, or materially reduced the flashback, flame jetting, and fireball effect.

283. The burden and cost of incorporating a reasonably effective flame-mitigation feature were outweighed by the foreseeable severity of catastrophic burn injuries caused when a high-proof ethanol container is exposed to an ignition source.

284. The risk of foreseeable harm posed by the subject bottle and closure assembly outweighed the burden on John Doe Bottle Manufacturer of adopting a practical and feasible alternative production practice.

285. The absence of a reasonably available flame-mitigation feature was a factual cause of Plaintiff's injuries because, but for that design omission, the flame would not have propagated into the bottle in the manner alleged, or the resulting fireball and flame projection would have been prevented or materially reduced.

286. The defect was a proximate cause of Plaintiff's injuries because severe burn injury to persons near a high-proof ethanol bottle exposed to an open flame is within the scope of the danger created by an inadequately protected necked container.

287. As a direct and proximate result of John Doe Bottle Manufacturer's defective bottle/closure design, the Plaintiff sustained severe and permanent injuries and damages

WHEREFORE, the Plaintiff demands judgment for damages, costs, and prejudgment interest against the Defendants and demands trial by jury of all issues so triable and such other relief the Court deems proper.

**COUNT XV – PRODUCT LIABILITY – NEGLIGENT DESIGN OF BOTTLE/ CLOSURE ASSEMBLY – JOHN DOE BOTTLE MANUFACTURER**

288. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

289. Bottle Manufacturer owed a duty to use reasonable care in designing, engineering, manufacturing, assembling, testing, selecting, and supplying a bottle-and-closure system intended to hold and dispense Everclear 151 or another high-proof ethanol product.

290. The duty arose because Bottle Manufacturer placed a container into the stream of commerce for use with a product that it knew, or reasonably should have known, was highly flammable and capable of generating ignitable vapors near an ignition source.

291. Bottle Manufacturer owed a duty to foreseeable users, handlers, consumers, and bystanders—including Plaintiff—to design and manufacture the bottle-and-closure system so that it was reasonably safe for foreseeable handling, dispensing, and foreseeable misuse involving proximity to heat, sparks, and open flame.

292. Bottle Manufacturer breached that duty by, among other acts and omissions:

a. designing and supplying a necked portable container for high-proof ethanol without reasonable flame-mitigation measures;

b. failing to evaluate the foreseeable risk of flame propagation through the bottle opening;

c. failing to incorporate a feasible flame-arresting, flame-mitigation, flashback-reducing, or controlled-pour feature;

d. failing to test the subject bottle-and-closure assembly for foreseeable flame-propagation and burning-liquid-expulsion hazards when used with high-proof ethanol; and

e. failing to take reasonable engineering measures, including re-designing the bottle, to reduce the risk that the bottle would project flame or burning liquid if vapors at the opening encountered an ignition source.

293. A reasonably prudent bottle manufacturer supplying a necked bottle for a 75.5% alcohol-by-volume ethanol product would evaluate the ignition and flame-propagation risks associated with the product-container combination.

294. The foreseeable risk of a severe burn injury from projected flame or burning liquid could have been materially reduced through reasonable design and engineering safeguards.

295. John Doe Bottle Manufacturer's negligence was a factual cause of Plaintiff's injuries because the flame jet / fireball mechanism depended on flame entering or propagating through the bottle's opening and creating a rapid expulsion of burning liquid and flame.

296. John Doe Bottle Manufacturer's negligence was a proximate cause of Plaintiff's injuries. The intervening conduct of John Doe Flag Burners 1 & 2 was foreseeable to the extent that Everclear 151 (75.5% ABV) would handled, poured, or misused near an ignition source.

297. As a direct and proximate result of John Doe Bottle Manufacturer's negligent bottle/closure design, the Plaintiff sustained severe and permanent injuries and damages

WHEREFORE, the Plaintiff demands judgment for damages, costs, and prejudgment interest against the Defendants and demands trial by jury of all issues so triable and such other relief the Court deems proper.

**COUNT XVI – FAILURE TO WARN / INSTRUCT**

**JOHN DOE BOTTLE MANUFACTURER**

298. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

299. John Doe Bottle Manufacturer possessed responsibility or authority over the subject bottle's design, closure, molded warnings, container warnings, warning placement, dispensing instructions, or integrated safety communications.

300. John Doe Bottle Manufacturer knew, or should have known, that the bottle was intended to hold and dispense a high-proof ethanol product and that ignition at or near the bottle opening could create a risk of flame propagation, fireball formation, and projected burning liquid.

301. John Doe Bottle Manufacturer failed to provide reasonable warnings or instructions through the bottle, closure, packaging system, or associated materials within its control concerning:

a. the danger of bringing the bottle or pour stream near an open flame;

b. the risk that vapors at the bottle opening may ignite and propagate flame into the bottle;

c. the danger that such ignition may produce sudden flame projection or expel burning liquid; and

d. the need to close, remove, and keep the bottle away from all ignition sources before lighting a flame.

302. An adequate warning or instruction, if within John Doe Bottle Manufacturer's design or production responsibility, would have conveyed the specific hazard of flame jetting, flashback, and fireball formation rather than merely the general proposition that the liquid was flammable.

303. John Doe Bottle Manufacturer had a role in the warning or safety-instruction system and failed to exercise reasonable care within that role.

304. Had John Doe Bottle Manufacturer supplied adequate safety instructions or warnings within its control, foreseeable handlers would have been warned not to introduce an heat, fire, open flame, or other ignition source to the bottle, its opening, or its pour stream.

305. The lack of an adequate warning and/or instruction was a factual and proximate cause of Plaintiff's injuries.

306. An adequate warning would have been received, understood, and followed by the persons handling the bottle.

307. As a direct and proximate result of John Doe Bottle Manufacturer's failure to warn and/or instruct, the Plaintiff sustained severe and permanent injuries and damages

WHEREFORE, the Plaintiff demands judgment for damages, costs, and prejudgment interest against the Defendants and demands trial by jury of all issues so triable and such other relief the Court deems proper.

**COUNT XVII – FAILURE TO WARN / INSTRUCT**

**JOHN DOE BEVERAGE RETAILER**

308. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

309. John Doe Beverage Retailer operated a package store or other retail spirits business in Washtenaw County, Michigan, where it engaged in the sale of distilled spirits and alcoholic beverages to consumers.

310. John Doe Beverage Retailer sold the bottle of Everclear 151 (75.5% ABV) involved in the Subject Incident to John Doe Beverage Purchaser.

311. John Doe Beverage Retailer knew or should have known in the exercise of reasonable care that Everclear 151 (75.5% ABV) was materially different in ethanol concentration from ordinary lower-proof alcoholic beverages, including ordinary beer, wine, and standard distilled spirits, and that the product's high ethanol concentration—75.5% ABV—distinguished it from lower-proof alcoholic beverages commonly displayed and sold in the same retail environment.

312. As a commercial seller of Everclear 151 (75.5% ABV), John Doe Beverage Retailer owed foreseeable purchasers, users, handlers, and persons foreseeably exposed to the product a duty to exercise reasonable care within the scope of its retail role, and to communicate danger to purchasers through point-of-sale warnings, merchandising, product placement, employee communication, or other reasonable measures within John Doe Beverage Retailer's control.

313. John Doe Beverage Retailer displayed Everclear 151 (75.5% ABV) in its distilled-spirits section in close physical proximity to beverages containing substantially lower alcohol concentrations, including beverages containing approximately 15.6% ABV or less.

314. John Doe Beverage Retailer did not use shelf tags, rack placards, aisle signage, point-of-sale warnings, display warnings, or other reasonably conspicuous retail communications advising purchasers that Everclear 151 contained 75.5% alcohol by volume; presented a materially greater ignition hazard than lower-proof beverages; could generate ignitable vapors at ordinary ambient temperatures; should never be poured, dispensed, or brought near heat, fire, open flame, or other ignition sources; and that the Subject Product could produce a sudden fireball, flame jet, or project burning liquid if ignited.

315. John Doe Beverage Retailer knew, or in the exercise of reasonable care should have known, that displaying Everclear 151 (75.5% ABV) as an ordinary beverage without an adequate point-of-sale warning could lead purchasers to underestimate the product's exceptional flammability and its flame-jetting hazard.

316. John Doe Beverage Retailer breached its duty of reasonable care by one or more of the following acts or omissions:

a. Selling Everclear 151 (75.5% ABV) without reasonably adequate point-of-sale warnings despite its actual or constructive knowledge of the product's specific fireball and flame-jetting hazard;

b. Merchandising Everclear 151 (75.5% ABV) beside substantially lower-proof beverages in a manner that obscured or minimized the product's materially higher ethanol concentration and ignition risk;

c. Failing to provide a conspicuous shelf, rack, display, counter, or checkout warning that Everclear 151 (75.5% ABV) is a high-proof ethanol product that must not be used, poured, or dispensed near an ignition source;

d. Failing to provide reasonable instructions that Everclear 151 (75.5% ABV) must not be used to ignite, accelerate, revive, or pour near a fire, flame, grill, candle, torch, stove, hot surface, or ignition source;

e. Failing to take reasonable point-of-sale measures to distinguish Everclear 151 (75.5% ABV) from lower-proof consumer beverages; and

f. Continuing to sell Everclear 151 (75.5% ABV) without additional retail warning measures after obtaining actual knowledge of prior flame-jetting, fireball, flash-fire, or severe burn incidents involving high-proof Everclear products.

317. John Doe Beverage Retailer's failure to provide adequate warnings and risk communications was a factual cause of Plaintiff's injuries because a reasonably conspicuous, specific point-of-sale warning would have informed the purchaser and foreseeable handlers that Everclear 151 (75.5% ABV) was not to be used as a fire accelerant or near an open flame due to the risk of flame jetting.

318. Had John Doe Beverage Retailer provided a reasonable warning identifying the product's high ethanol concentration, ignitable-vapor hazard, and risk of sudden projected flame, the product would not have been used in a manner that caused severe injury to the Plaintiff.

319. John Doe Beverage Retailer's failure to warn was a proximate cause of Plaintiff's injuries.

320. As a direct and proximate result of John Doe Beverage Retailer's failure to use reasonable care, the Plaintiff sustained severe and permanent injuries and damages

WHEREFORE, the Plaintiff demands judgment for damages, costs, and prejudgment interest against the Defendants and demands trial by jury of all issues so triable and such other relief the Court deems proper.

**COUNT XVIII - NEGLIGENCE**

**JOHN DOE FLAG BURNERS 1 & 2**

321. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

322. John Doe Flag Burners 1 & 2 received Everclear 151, a 75.5% alcohol by volume beverage,, from John Doe Beverage Purchaser with the intent to use it to ignite and accelerate a fire on a University of Wisconsin flag.

323. The Party was a chapter-promoted Delta Chi event held at the Subject Property, where Delta Chi members, pledges, and other University of Michigan students gathered.

324. John Doe Flag Burners 1 & 2 took the stage constructed in the yard of the Subject Property while attendees, including Plaintiff, gathered nearby to observe the flag-burning activity.

325. Plaintiff was positioned approximately ten feet from the stage.

326. John Doe Flag Burners 1 & 2 owed Plaintiff and other foreseeable attendees a duty to exercise reasonable care in handling Everclear 151, a 75.5% alcohol by volume beverage, igniting the flag, accelerating the fire, and conducting the flag-burning activity.

327. John Doe Flag Burners 1 & 2 breached their duty of reasonable care by using Everclear 151, a 75.5% alcohol by volume beverage, to ignite and accelerate the flag fire while attendees were gathered near the stage.

328. John Doe Flag Burners 1 & 2 further breached their duty of reasonable care by introducing an open flame to the Everclear 151 bottle during the flag-burning activity.

329. John Doe Flag Burners 1 & 2 further failed to exercise reasonable care by:

a. Using a highly flammable liquid in connection with an open flame;
b. Using Everclear 151, a 75.5% alcohol by volume beverage, to ignite and accelerate a fire while Plaintiff and other attendees were positioned nearby;
c. Failing to maintain a reasonably safe separation between the fire activity and nearby attendees;
d. Failing to stop or modify the flag-burning activity before using Everclear 151, a 75.5% alcohol by volume beverage, near an open flame and in the close proximity of attendees, including Plaintiff; and
e. Failing to warn Plaintiff and other foreseeable attendees of the danger created by using Everclear 151, a 75.5% alcohol by volume beverage, near an open flame.

330. Everclear 151 is a flammable liquid that should be handled with care.

331. The foreseeable consequences of introducing an open flame to a container of highly flammable alcohol included ignition, flame projection, flash fire, serious burn injury, and other catastrophic thermal injury.

332. During the Party, when an open flame was introduced to the Everclear 151 bottle being used by John Doe Flag Burners 1 & 2, a fireball left the stage and ignited Plaintiff's upper body.

333. As a direct and proximate result of the actions and omissions by the John Doe Flag Burners 1 & 2, Plaintiff sustained severe and permanent injuries and damages

WHEREFORE, the Plaintiff demands judgment for damages, costs, and prejudgment interest against the Defendants and demands trial by jury of all issues so triable and such other relief the Court deems proper.

**COUNT XIX – NEGLIGENCE PER SE**
**JOHN DOE FLAG BURNERS 1 & 2**

334. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

335. John Doe Flag Burners 1 & 2 negligently failed to follow applicable Delta Chi, University, FSL, IFC, legal, and safety requirements, government regulations, industry standards, best practices, internal rules, policies and procedures that establish a duty of reasonable care for the benefit of University students, including Plaintiff.

336. As a direct and proximate result of the actions and omissions by John Doe Flag Burners 1 & 2, Plaintiff sustained severe and permanent injuries and damages.

WHEREFORE, the Plaintiff demands judgment for damages, costs, and prejudgment interest against the Defendants and demands trial by jury of all issues so triable and such other relief the Court deems proper.

**COUNT XX – GROSS NEGLIGENCE**
**JOHN DOE FLAG BURNERS 1 & 2**

337. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

338. John Doe Flag Burners 1 & 2 intentionally used Everclear 151, a 75.5% alcohol by volume beverage, to ignite and accelerate a fire on a University of Wisconsin flag during a crowded fraternity-related Party.

339. Using highly flammable alcohol to ignite or accelerate an open fire in the presence of nearby attendees created an obvious and extreme risk of fire, flame projection, catastrophic burn injury, and permanent disfigurement.

340. The conduct of John Doe Flag Burners 1 & 2 in using Everclear 151, a 75.5% alcohol by volume beverage, to ignite and accelerate the flag fire and introducing an open flame to the Everclear 151 bottle while attendees stood nearby was so reckless as to demonstrate a substantial lack of concern for whether an injury would result.

341. The grossly negligent and reckless conduct of John Doe Flag Burners 1 & 2 was a factual and proximate cause of the Subject Incident and Plaintiff's injuries and damages.

WHEREFORE, Plaintiff ALEXANDER OTTENSOSER requests that this Honorable Court enter judgment in his favor against Defendants in the amount to which he is found to be entitled, as determined by the trier of fact, together with interest, costs, and attorney fees.

Respectfully submitted,

*/s/ J. Ryan Will*

J. Ryan Will (*Pending Admission PHV*)
Florida Bar Number: 0024122
Morgan & Morgan
Attorneys for Plaintiff
444 Seabreeze Boulevard, Suite 100
Daytona Beach, Florida 32118
(386) 281-6790 | Fax: (386) 265-6551
rwill@forthepeople.com

*/s/ Daniel I. Jedell*
DANIEL I. JEDELL (P80850)
MORGAN & MORGAN
Attorneys for Plaintiff
150 W. Jefferson Ave., Suite 1400
Detroit, MI 48226
(313) 241-5432 | Fax: (313) 739-1978
daniel.jedell@forthepeople.com

Dated: November 3, 2026